2010 ME 25

**Alfred L. AYDELOTT et al.**

v.

**CITY OF PORTLAND et al.**

Supreme Judicial Court of Maine.

Submitted on Briefs: Feb. 25, 2010.
Decided: March 23, 2010.

Daniel L. Cummings, Esq., Norman, Hanson & DeTroy, LLC, Portland, ME, for Patricia and Richard Ashton.

Jonathan L. Goldberg, Esq., MittelAsen, LLC, Portland, ME, for Alfred L. Aydelott, Adrienne Giske, Claire Filleittaz, Monique Levesque, and Donna Marston.

Panel: ALEXANDER, LEVY, SILVER, MEAD, GORMAN, and JABAR, JJ.

SILVER, J.

[¶ 1] Patricia and Richard Ashton appeal from a judgment entered in the Superior Court (Cumberland County, *Crowley, J.*) vacating a decision of the City of Portland Zoning Board of Appeals (Board) that

upheld the issuance of a building permit to the Ashtons. The Ashtons contend that the Board correctly interpreted the provisions of the Portland Code of Ordinances (Code), and correctly applied the requirements of Portland, Me., Code § 14–436(b) (Aug. 18, 1997) to the Ashtons' permit application. We agree, and vacate the judgment of the Superior Court.

## I. BACKGROUND

[¶ 2] Patricia and Richard Ashton own property located in an "IR–2" zone on Peaks Island, in Portland. The pre-expansion house on that property was a one and a half story, "Cape style" home, that is legally nonconforming to the Portland Code in several respects including yard setbacks and minimum lot size.

[¶ 3] The Ashtons applied for a building permit on September 15, 2008, to expand their house to create a "rough second floor shell with stairs." The proposed expansion would increase the floor area by 464.14 square feet, which the City calculated to be forty-one percent of the first floor footprint. The City issued a permit to the Ashtons on September 18, 2008.

[¶ 4] Alfred L. Aydelott and other neighboring property owners (collectively Neighbors) appealed the permit grant to the Board, arguing that the Ashtons' permit application did not meet the applicable Code provisions. The relevant Code section states:

**Sec. 14–436. Building extensions.**

Existing non-residential and residential principal structures which are nonconforming as to any area and/or yard requirements may be enlarged within the existing footprint subject to the following provisions:

(a) *For principal structures lawfully nonconforming as to land area per dwelling unit as of July 19, 1988:* The

floor area of the expansion shall be limited to no more than fifty (50) percent of the first floor footprint. The additional floor area shall be created in the uppermost floor by the use of dormers, turrets or similar structures needed to provide the minimum height required for habitable space while preserving the existing roof configuration to the maximum extent possible.

(b) *For residential principal structures conforming as to land area per dwelling unit as of July 19, 1988, but lawfully nonconforming as to any yard setback or nonresidential principal structures that are lawfully nonconforming as to any yard setback:* The floor area of the expansion shall be limited to no more than eighty (80) percent of the first floor footprint. The additional floor area shall be created by raising the existing roof configuration the minimum amount required to create an additional story of habitable space, or by the use of dormers, turrets or similar structures.

Building expansions under this section may occur only once during the lifetime of an existing structure.

Portland, Me., Code § 14–436. The Code does not contain a "land area per dwelling unit" standard applicable to a single-family residence lot within the IR–2 zone.

[¶ 5] The Board conducted a hearing on November 13, 2008, and voted unanimously to deny the Neighbors' appeal, upholding the issuance of the permit. In evaluating the permit application, the Board applied the requirements of section 14–436(b) for "structures conforming as to land area per dwelling unit," as opposed to section 14–436(a) for structures not conforming to that standard. The Board found that there was no applicable land-area-per-dwelling-unit standard because "[m]inimum land area per dwelling unit is

a term of art [with] a separate meaning from minimum lot size; omission of [minimum] land per dwelling unit in island zone was intentional." Based on this holding, the Board concluded that section 14–436(b) was the relevant provision.

[¶ 6] Applying section 14–436(b), the Board found that the Ashtons' permit application met the requirements of the Code, and denied the Neighbors' appeal. The Ashtons' proposed expansion involved raising the roof configuration, as allowed in section 14–436(b), and the Board agreed with the City's calculation that the expansion would be only forty-one percent of the square footage of the first floor footprint, well within the section's maximum of eighty percent.

[¶ 7] The Neighbors appealed the Board decision to the Superior Court pursuant to M.R. Civ. P. 80B, arguing that in the context of a single-family residence lot, the requirements of minimum lot size and land area per dwelling unit must be the same, and therefore that because the Ashtons' property is nonconforming as to minimum lot size, it must also be nonconforming as to land area per dwelling unit. The Superior Court agreed and held that the Board had incorrectly applied section 14–436(b), and remanded to the Board for a determination of whether the Ashtons' application met the requirements of section 14–436(a).

[¶ 8] On remand, the Board found that the Ashtons' permit application did not meet the requirements of section 14–436(a) because the additional floor area was not created by the use of dormers and turrets and because the additional space exceeded the minimum height required for dormers and turrets. The parties do not appeal this decision. The Superior Court then entered final judgment vacating the Board decision of November 13, 2008.

## II.  DISCUSSION

### A.  Standard of Review

■ [¶ 9] In the context of an appeal under Rule 80B, we review the agency's decision directly. *Logan v. City of Biddeford*, 2006 ME 102, ¶ 8, 905 A.2d 293, 295. Here, we review the decision of the Board as opposed to that of the building authority because although the Board and the Code describe the Board's role as an "appeal," the Board heard evidence and conducted a de novo review, and the Code did not explicitly limit that capacity, and therefore the Board acted as fact-finder and decision-maker. *See Stewart v. Town of Sedgwick*, 2000 ME 157, ¶¶ 4, 8 n. 4, 757 A.2d 773, 775–76 (stating that "[i]f the Board of Appeals acted as a tribunal of original jurisdiction, that is, as factfinder and decision maker, we review its decision directly" and that "a Board of Appeals will ordinarily act in a purely appellate fashion only when the applicant or petitioner has had an opportunity for hearing before another tribunal").

■ [¶ 10] The decision of the Board is reviewed "for error of law, abuse of discretion or findings not supported by substantial evidence in the record." *Yates v. Town of Southwest Harbor*, 2001 ME 2, ¶ 10, 763 A.2d 1168, 1171 (quotation marks omitted). The party seeking to overturn the decision bears the burden of persuasion. *Sawyer Envtl. Recovery Facilities, Inc. v. Town of Hampden*, 2000 ME 179, ¶ 13, 760 A.2d 257, 260. "The interpretation of a local ordinance is a question of law, and we review that determination de novo." *Logan*, 2006 ME 102, ¶ 8, 905 A.2d at 295 (quotation marks omitted).

### B.  Interpretation of the Code

■ [¶ 11] The issue raised here is which provision of section 14–436 applies to the Ashtons' permit application: that

for structures "conforming" as to land area per dwelling unit, or the provision for nonconforming structures. The Ashtons argue that the Code intentionally omits a land-area-per-dwelling-unit standard in the IR–2 zone, and that consequently the Court should not read in a particular standard, and should find them "conforming" as to that requirement. We agree.

■ [¶ 12] "The terms of a zoning ordinance must be construed reasonably with regard both to the objects sought to be obtained and to the general structure of the ordinance as a whole." *LaPointe v. City of Saco*, 419 A.2d 1013, 1015 (Me. 1980); *see also Blouin v. City of Rockland*, 441 A.2d 1008, 1010 (Me.1982) ("In order to gain an understanding of this particular section, reference must be made to the ordinance in its entirety. This approach is particularly useful to determine the meaning of a phrase or term ... not defined in the enactment.") (citation omitted). Here, looking at the entire Code, we conclude that there is no land-area-per-dwelling-unit requirement imposed on single-family detached dwellings in the IR–2 zone. The Code includes an explicit land-area-per-dwelling-unit standard for each of the non-island residential zones, all located in the "[d]imensional requirements" provisions. In the IR–2 zone, however, although the layout of the provisions is the same, there is no land-area-per-dwelling-unit standard that applies to all of the uses within the zone. This contrast suggests an intentional distinction. *See DaimlerChrysler Corp. v. Me. Revenue Servs.*, 2007 ME 62, ¶ 17, 922 A.2d 465, 470–71 (discussing the Maine Lemon Law and finding that "[c]learly, had the Legislature wanted [a provision] it could have easily done so, as evidenced by the explicit mechanism the Legislature provided" in another provision); *Arsenault v. Sec'y of State*, 2006 ME 111, ¶ 17, 905 A.2d 285, 289 ("If the Legislature had

intended [a requirement], it knew how to say so directly as it did in [a comparable section]."); *see also Russello v. United States*, 464 U.S. 16, 23, 104 S.Ct. 296, 78 L.Ed.2d 17 (1983) ("[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.") (quotation marks omitted). Further, as the Ashtons point out, the IR–2 zone does contain a land-area-per-dwelling-unit standard for a different use: planned residential unit development. *See* Portland, Me., Code § 14–145.8(b) (July 15, 1985).

[¶ 13] The Neighbors suggest that if the standard was intentionally omitted, it is because in the context of a single dwelling lot, "land area per dwelling unit" has the same meaning as "minimum lot size," which is set as 20,000 square feet in the IR–2 zone. *See id.* § 14–145.11. An examination of the rest of the Code, however, contradicts this argument. In the non-island zones, the Code includes both a land-area-per-dwelling-unit requirement and a minimum lot size, even when the two numbers are the same, as they are in three of the seven residential zones. Therefore, the absence of a land-area-per-dwelling-unit requirement in the IR–2 zone cannot be explained by the assumption that the minimum lot size was intended as a substitute.

[¶ 14] Even if the omission of the requirement was inadvertent, land area per dwelling unit and minimum lot size are treated throughout the Code as two independent requirements, with separate meanings. Minimum lot size is presented in the Code as the minimum allowed square footage of a lot, set according to the category of use of the land. Minimum land area per dwelling unit, sometimes

written as "minimum lot area per dwelling unit" or "minimum area per dwelling unit," is also a minimum square footage, but is the area required for each dwelling unit placed on the lot, with a dwelling unit defined as "[o]ne (1) or more rooms with private bath and kitchen facilities comprising an independent self-contained dwelling unit." Portland, Me., Code § 14–47 (Dec. 21, 1970). Therefore, a property with multiple dwelling units may be required, by virtue of the land-area-per-dwelling-unit requirement, to be larger than the specified general "minimum lot size" for that use category within the zone.

[¶ 15] Because of these different definitions, we cannot equate the provisions in this case. Instead this Court must decide, in light of the fact that there is no land-area-per-dwelling-unit requirement applicable to the Ashtons, which provision of section 14–436 applies to their expansion. Because the Ashtons cannot be "non-conforming" to a non-existent requirement, we hold that the Board correctly applied section 14–436(b) to the Ashtons' permit application.

C. Application of Section 14–436(b)

[¶ 16] The Neighbors argue that even if the Board was correct in applying section 14–436(b) to the Ashtons' application, it erred in determining that the application met those requirements because the application called for raising the roof to allow an upper-level ceiling height of eight feet, which is not "the minimum amount required to create an additional story of habitable space," as required by the Code. *See id.* § 14–436(b). The Neighbors contend that the allowable height is either seven feet six inches, which was referenced at the hearing as a minimum in the Building Code, or less, because one of the Neighbors presented an alternate proposal

that would have raised the roof significantly less.

[¶ 17] The Neighbors, as the parties seeking to overturn the Board's decision, have not met their burden of showing that the Board erred on this issue. *See Sawyer Envtl. Recovery Facilities*, 2000 ME 179, ¶ 13, 760 A.2d at 260. The Neighbors point to no Code section clarifying the height increase allowed under section 14–436(b), and there is testimony in the record to support the Board's finding that the Ashtons' proposed increase was a reasonable minimum height to create an additional story of habitable space. Therefore, the Board did not err in determining that the Ashtons' application met the roof height standard of section 14–436(b). *See Mack v. Town of Cape Elizabeth*, 463 A.2d 717, 719–20 (Me.1983) ("An appellate court . . . may not substitute its judgment for that of the municipal body, but is limited to determining whether, from the evidence of record, facts could reasonably have been found by the zoning board to justify its decision.").

The entry is:

Judgment of the Superior Court vacated. Remanded for a judgment affirming the Zoning Board of Appeals decision of November 13, 2008.