2011 ME 21

**TOWN OF VASSALBORO**

v.

**Leo BARNETT.**

Supreme Judicial Court of Maine.

Argued: Jan. 11, 2011.
Decided: Feb. 15, 2011.

Clifford H. Goodall, Esq. (orally), Dyer Goodall and Denison, P.A., Augusta, ME, for Leo Barnett.

Alton C. Stevens, Esq. (orally), Marden, Dubord, Bernier & Stevens, Waterville, ME, for the Town of Vassalboro.

Panel: SAUFLEY, C.J., and ALEXANDER, LEVY, SILVER, MEAD, GORMAN, and JABAR, JJ.

MEAD, J.

[¶ 1]   Leo Barnett appeals from a judgment of the District Court (Waterville, *Mills, J.*)[1] finding for the Town of Vassalboro on all six counts of a land use complaint filed by the Town pursuant to M.R. Civ. P. 80K. Upon finding the violations, which concerned a ten-lot subdivision that Barnett owns, the court ordered that the violations be corrected, imposed a $10,000 civil penalty, and ordered Barnett to pay $11,533.83 in attorney fees and costs. Barnett contends that the court erred in its interpretation and application of the ordinance and statutory provisions at issue. Discerning no error, we affirm the judgment.

## I.  BACKGROUND

[¶ 2]   At the hearing on this matter, the Superior Court heard testimony from three witnesses: David Allen, a traffic engineer for the Maine Department of Transportation (MDOT); Paul Mitnik, the Town of Vassalboro's Code Enforcement

---

1.   The case was managed and heard by Justice Mills sitting as a District Court judge.

Officer (CEO); and Leo Barnett. The court also admitted a number of exhibits in evidence. In its resulting judgment, the court found that Allen and Mitnik's testimony was credible, and Barnett's was not. Accordingly, we consider the facts explicitly found by the court or established by the testimony and exhibits that it found to be credible. *See Efstathiou v. Efstathiou*, 2009 ME 107, ¶ 12, 982 A.2d 339, 343 (stating that "the court, as fact-finder and sole arbiter of witness credibility, was free to selectively accept or reject portions or all of any witness's testimony").

[¶ 3] In May 2006, Barnett appeared before the Vassalboro Planning Board (Board), seeking information concerning his plan to create a ten-lot subdivision on land that he owned abutting Route 201. He had already obtained preliminary approval from several Town agencies, and work on what would become the road through the subdivision was well underway. Barnett subsequently applied for a subdivision permit pursuant to the Town's Subdivision Ordinance. *See* Vassalboro, Me., Subdivision Ordinance (June 2006). At its meeting on June 6, 2006, the Board accepted Barnett's application as complete, although the Town later discovered that Barnett had not filed evidence that he had created a legal entity to take ownership of the subdivision's road and two common-use wells as required by the Ordinance. *See* Vassalboro, Me., Subdivision Ordinance 16. Barnett did submit a required MDOT highway entrance permit granting approval for access to the subdivision from Route 201, subject to Barnett's fulfillment of three special conditions. *See* Vassalboro, Me., Subdivision Ordinance 22. The Board considered the applicable criteria for subdivision approval, including those criteria requiring compliance with the Subdivision Ordinance and road safety standards, and approved Barnett's application by a 5–0 vote.

[¶ 4] On October 20, 2008, pursuant to M.R. Civ. P. 80K, the Town filed a land use complaint in the District Court alleging four violations of Town Ordinances; the complaint was later amended to add two additional violations. As amended, the complaint alleged that Barnett (1) did not fully comply with the special requirements of his MDOT highway entrance permit; (2) allowed a mobile home to be located on one of his lots without the required building or plumbing permits; (3) constructed a deficient subdivision road, in that its centerline was not coterminous with its right of way and it had not been paved; (4) did not create the required legal entity to take ownership of the road and common-use wells; (5) engaged in a prohibited commercial use by selling topsoil from subdivision property without a permit; and (6) removed and sold a large quantity of topsoil beyond what was necessary to build the subdivision.

[¶ 5] The matter was tried on August 20, 2009. On November 9, 2009, the court entered its judgment, finding that all six violations were committed. This appeal followed.

## II. DISCUSSION

[¶ 6] Barnett contends that the court erred in interpreting town ordinances, and also misapplied statutory provisions at issue. The interpretation of a local ordinance is a question of law that we review de novo, as is the interpretation of a statute. *Rudolph v. Golick*, 2010 ME 106, ¶ 8, 8 A.3d 684, 686; *State v. Aboda*, 2010 ME 125, ¶ 10, 8 A.3d 719, 722. "However, local characterizations or fact-findings as to what meets ordinance standards will be accorded substantial deference. We examine an ordinance for its plain meaning and construe its terms reasonably in light of the purposes and objec-

tives of the ordinance and its general structure." *Rudolph*, 2010 ME 106, ¶¶ 8–9, 8 A.3d at 686 (citations omitted) (quotation marks omitted).

A. Highway Entrance

■ [¶ 7] The Subdivision Ordinance performance standards include a requirement that "[a]ny and all required permits from the Maine Department of Transportation shall be submitted" to the Board before it approves a subdivision application. Vassalboro, Me., Subdivision Ordinance 22. The court found that although Barnett submitted an MDOT permit, he nonetheless violated the Ordinance because he had not fully complied with two of the permit's special conditions: (1) that the approved entrance be the only entrance to the subdivision; and (2) that Barnett pave two feet of both shoulders of Route 201 for 250 feet in each direction from the subdivision's entrance. The record establishes that Barnett received several notices of the violations from both MDOT and the Town.

[¶ 8] Barnett does not challenge the Ordinance's requirement that he obtain an MDOT permit, rather he contends that the Town did not have the authority to enforce the conditions of the permit once it was issued because the enforcement function has been preempted by state law and reserved to MDOT. Accordingly, Barnett argues that he fully complied with the Ordinance when he submitted the permit with his subdivision application. We disagree.

[¶ 9] By statute, "[i]t is unlawful to construct or maintain any driveway, entrance or approach within the right-of-way of any state highway ... without a written permit from the Department of Transportation...." 23 M.R.S. § 704 (2010). Although it is clear that MDOT has the sole authority to issue the required permit initially, nothing in section 704 reserves to MDOT the exclusive authority to enforce the permit once it has been issued.[2] To the contrary, the statute contemplates shared responsibility for the enforcement of highway entrance standards between MDOT and the municipality involved: "The Department of Transportation is directed *and municipalities are authorized* to adopt rules and regulations for the design, location and construction of driveways, entrances and approaches on state highways ... to adequately protect and promote the safety of the traveling public...."[3] 23 M.R.S. § 704(2) (emphasis added).

[¶ 10] Furthermore, the Legislature has provided that a municipal official, in this case the CEO, may enforce "local subdivision ordinances adopted pursuant to [statutory home rule authority]." 30–A M.R.S. § 4452(1), (5)(N) (2010). Under the Town's home rule authority, its Subdivision Ordinance is presumed to be valid unless it purports to exercise a power or function expressly denied to the Town by statute, or if enforcement of the Ordinance "would frustrate the purpose of any state law." 30–A M.R.S. § 3001, (3) (2010). In this instance, the Town's enforcement of

---

2. Barnett points to 23 M.R.S. § 704(8) (2010) as support for his argument, but that provision simply establishes procedures and penalties that are applicable when MDOT chooses to take an enforcement action. It does not bar municipalities from enforcing permit requirements through a land use complaint filed pursuant to M.R. Civ. P. 80K, which would be the primary enforcement mechanism if the permit was issued initially by a

municipality located within an urban compact area. 23 M.R.S. § 704 (2010); *see* n.3 below.

3. To further illustrate the joint state/local nature of responsibility for highway safety, in the case of municipalities within an urban compact area it is the municipality, not MDOT, that issues the permit *ab initio*. 23 M.R.S. § 704.

Barnett's MDOT permit requirements furthers, rather than frustrates, the purpose of 23 M.R.S. § 704, and so it is a valid exercise of the Town's home rule authority. Although MDOT could have taken enforcement action against Barnett if it chose, in enacting section 704 the Legislature did not intend to render the Town powerless to enforce MDOT-mandated highway safety standards affecting its residents. *See Damon v. S.D. Warren Co.*, 2010 ME 24, ¶ 10, 990 A.2d 1028, 1032 (stating that "where statutory construction is at issue, we construe a statute to give effect to legislative intent").

## B. Subdivision Road

[¶ 11] Based on the CEO's testimony at the hearing, the court found that the road in Barnett's subdivision was classified by the Town's Road Construction Ordinance as a "private major" road. As such, the Ordinance required that the road be paved to a width of twenty feet, and that "[t]he centerline of the roadway ... be the centerline of the right-of-way." Vassalboro, Me., Road Construction Ordinance § VI(G), (I) (June 3, 1989). The CEO testified that at the time of the hearing, despite having received three notices of the road's deficiencies, Barnett had not paved the road, and its centerline was an average of six to eight feet out of alignment with its right-of-way.

[¶ 12] Barnett contends that the Ordinance is not applicable because his subdivision is a "mobile home park." He received a state license for a nine-lot manufactured housing community on March 23, 2009, almost three years after his application for a regular ten-lot subdivision was approved by the Board. Based on that license, he maintains that the road is exempted from the Ordinance's road construction requirements by 30–A M.R.S. § 4358(3)(F) (2010), which provides, "Except as provided by paragraph G, municipal road standards shall not apply to private roads within a mobile home park unless the developer intends to offer the roads to the municipality for acceptance as town ways." The Town concedes that the subdivision road was not intended to be offered for acceptance as a town way.

[¶ 13] As an initial matter, even if Barnett was correct in asserting that the subdivision is a mobile home park, he is still in violation of 30–A M.R.S. § 4358(3)(G)(2) (2010), which provides that "[a] municipality may require by ordinance or rule that privately owned roads within a mobile home park ... [h]ave a right-of-way up to 23 feet in width, 20 feet of which the municipality may require to be paved." Barnett argues that the Town "has no ordinance or rules concerning privately owned roads within a mobile home park," but he also agrees that "[i]t is undisputed and there is no question that in the Town of Vassalboro, the creation of a mobile home park is also the creation of a subdivision needing approval under the Subdivision Ordinance." The paving requirements imposed by the Road Construction Ordinance for "private major" roads in a subdivision are equally applicable to a subdivision that is further classified as a mobile home park.

[¶ 14] Regardless, we agree with the Town that Barnett's subdivision is not a mobile home park. By statute, a "mobile home park" is "a parcel of land under unified ownership approved by the municipality for the placement of 3 or more manufactured homes." 30–A M.R.S. § 4358(1)(B) (2010). The CEO testified at the hearing that the subdivision was approved for either mobile homes or stick-built homes, and that of the ten lots in the subdivision, two preexisting stick-built homes are located on lot one, two new stick-built homes are located on lots four

and six, and all of the lots could eventually be used for stick-built homes. Accordingly, although the subdivision was approved by the Town in a way that *allowed* mobile homes, it was not approved specifically *for* mobile homes.

[¶ 15] Furthermore, although the trial court did not explicitly so find, it could have concluded from the evidence that Barnett had offered lots in the subdivision for sale, and therefore did not intend for the subdivision to remain under unified ownership. Finally, the fact that Barnett did not obtain a mobile home park license from the State for nearly three years after the Board approved his subdivision application, and then received the license only after the Town filed its land use complaint, supports a conclusion that neither Barnett nor the Town thought a mobile home park was under consideration at the time the subdivision was approved.

## C. Legal Entity

■ [¶ 16] In a section entitled "Submission of the Final Plan," the Subdivision Ordinance requires that when common-use systems such as wells and roads are part of a subdivision, "the developer shall vest ownership of each of these areas individually or collectively in a legal entity established under Maine law." Vassalboro, Me., Subdivision Ordinance 16. One share in the entity must then be conveyed with each lot in the subdivision that is conveyed. *Id.* The Ordinance goes on to state that "[p]rior to obtaining final approval from the Planning Board, the developer must show evidence that this entity has been created according to the provisions specified." *Id.*

[¶ 17] Barnett admits that he did not fulfill this requirement, but argues that because the Board apparently overlooked it when it accepted his application as complete, it is now unenforceable. The trial court found a violation notwithstanding the Board's oversight upon finding that Barnett suffered no prejudice. "We examine an ordinance for its plain meaning and construe its terms reasonably in light of the purposes and objectives of the ordinance and its general structure." *Rudolph,* 2010 ME 106, ¶ 9, 8 A.3d at 686 (quotation marks omitted). Read in that light, the provision of the Ordinance at issue contains both a performance requirement ("the developer shall vest ownership") and an application submission requirement ("the developer must show evidence"). Vassalboro, Me., Subdivision Ordinance 16. We agree with Barnett when he asserts that "[a] submission requirement is distinguishable and different from a performance standard." Contrary to the thrust of his argument, however, Barnett was not cited in the land use complaint for failing to show evidence to the Board that he created the required legal entity; he was cited for not creating the entity at all.

[¶ 18] Furthermore, the record supports the court's finding that Barnett suffered no prejudice as a result of being required to form the necessary legal entity after the subdivision was approved, rather than before the Board acted on his application. Barnett received notice of the violation in November 2008 and could have formed the required legal entity prior to the Town's filing of the amended land use complaint in March 2009, thus avoiding any civil penalty. Moreover, the Town did not seek to revoke or restrict Barnett's original permit or alter the subdivision as physically constructed;[4] rather, it sought

---

4. This is not a situation where the Town is attempting to enforce a new or changed provision. *See Sahl v. Town of York,* 2000 ME 180, ¶¶ 11–14, 760 A.2d 266, 269–70 (holding

to enforce an existing provision of the Ordinance that required only administrative action by Barnett.[5]

### D. Remaining Counts of the Complaint

[¶ 19] The other issues Barnett raises require less discussion. The record supports by a preponderance of the evidence the court's findings that Barnett committed the three remaining violations alleged in the complaint when he (1) allowed a mobile home to occupy a lot in the subdivision without the required permit; (2) engaged in a commercial use, not an accessory use, by selling topsoil from subdivision property without a permit; and (3) removed and sold significantly more than the surplus topsoil that resulted from creating the subdivision. *See* M.R. Civ. P. 80K(i); *Hafford v. Hafford,* 2010 ME 128, ¶ 6, 8 A.3d 629, 631 (stating that a factual finding is reviewed for clear error and will not be disturbed on appeal "unless no competent evidence in the record supports it"). Contrary to Barnett's contentions, we discern no error of law in the court's interpretation of the ordinance provisions involved in those findings. *See Rudolph,* 2010 ME 106, ¶ 8, 8 A.3d at 686.

The entry is:

Judgment affirmed.

---

5. At oral argument, Barnett confirmed that none of the lots in the subdivision have yet been conveyed, and so presumably no revision of existing deeds is required.