2011 ME 116

### Susan BIZIER et al.

v.

### TOWN OF TURNER et al.

Supreme Judicial Court of Maine.

Argued: Oct. 14, 2011.

Decided: Nov. 22, 2011.

*In re Christopher H.*, 2011 ME 13, ¶ 18, 12 A.3d 64; *Rideout v. Riendeau*, 2000 ME 198, ¶ 15, 761 A.2d 291.

Jeffrey A. Thaler, Esq., (orally), Katherine A. Joyce, Esq., and Andrew C. Helman, Esq., Bernstein, Shur, Sawyer & Nelson, Portland, for appellants Susan Bizier and Philip Bizier.

Catherine R. Connors, Esq., (orally), and Matthew D. Manahan, Esq., Pierce Atwood LLP, Portland, for appellee Hannaford Bros. Co.

Panel: SAUFLEY, C.J., and ALEXANDER, LEVY, SILVER, MEAD, GORMAN, and JABAR, JJ.

GORMAN, J.

[¶ 1]  Susan Bizier and Philip Bizier appeal from the Superior Court's (Androscoggin County, *Clifford, J.*) affirmance pursuant to M.R. Civ. P. 80B (2011) of the Town of Turner Planning Board's decision to grant Hannaford Bros. Co.'s application for a site plan review permit to construct a grocery store and drive-through pharmacy.  The Biziers argue the Board erred in concluding that Hannaford's site plan relates harmoniously and in good scale with the natural terrain and surrounding development of the area as the Turner Zoning Ordinance requires.  They also argue the Board erred in failing to conclude that the Hannaford site plan would create an illegal back lot.  We disagree and affirm.

## I.  BACKGROUND

[¶ 2]  Hannaford proposes to build a supermarket and drive-through pharmacy on the corner of Route 4 (Auburn Road) and Snell Hill Road in Turner.  The record reveals that, to the west of the proposed

site, John L. Jordan owns land in fee simple. The Jordan lot currently has 233 feet of frontage on Snell Hill Road and encompasses Jordan Lane, a private street that provides Jordan and several other property owners with access to Snell Hill Road. Hannaford plans to purchase a portion of the Jordan lot in order to complete its project. Following the proposed sale, Jordan's frontage on Snell Hill Road will shrink to about sixty-five feet, but his lot will still contain Jordan Lane. The Biziers own a parcel, which also fronts on Snell Hill Road, on the other side of Jordan Lane.

[¶ 3] Hannaford initially provided the Turner Planning Board with a sketch site plan on May 13, 2009 and, in July 2009, Hannaford submitted a site plan review application to the Board. Throughout the remainder of 2009, the Board considered the project proposal at workshop meetings, Planning Board meetings, and public hearings. It accepted oral public comments during at least two hearings and written submissions throughout its review process.

[¶ 4] During the Board's review, a group of concerned citizens, including the Biziers, formed the Turner Village Preservation Committee to express their opposition to the project. The Committee retained counsel, hired consultants to explore matters related to Hannaford's proposal, actively participated in the Board's review, and detailed its objections to the project.

[¶ 5] The Board voted to grant the permit with conditions on March 10, 2010. In considering whether the proposed Hannaford parcel would meet the Zoning Ordinance standards, the Board made extensive findings regarding the proposed site plan's aesthetic and structural qualities. Ultimately, it concluded that the plan would relate harmoniously and in good scale with the natural terrain and surrounding development of the area. The Biziers and several other abutters to the site directly appealed to the Superior Court on April 7, 2010, pursuant to 30–A M.R.S. § 4353(1) (2010) and M.R. Civ. P. 80B. Following a hearing, the Superior Court affirmed the Board by decision dated February 10, 2011. The Biziers timely appeal pursuant to 14 M.R.S. § 1851, M.R. Civ. P. 80(B)(m), and M.R. App. P. 2 (2011).[1]

1. The Biziers filed their appeal from the Planning Board directly with the Superior Court. Such an appeal is only permissible pursuant to 30–A M.R.S. § 4353(1) if a town's ordinance so provides. *See Hodsdon v. Town of Hermon*, 2000 ME 181, ¶ 3, 760 A.2d 221. The Zoning Ordinance now in effect permits a direct appeal. *See* Turner, Me., Zoning Ordinance § 7(C)(6)(c) (Apr. 2, 2011). When the Board voted to grant the permit on March 10, 2010, however, the Zoning Ordinance did not permit a direct appeal to the Superior Court. *See* Turner, Me., Zoning Ordinance § 7(C)(6) (Apr. 4, 2009).

In April 2010, two days after the Biziers filed their action in the Superior Court, the Turner town meeting approved two articles retroactively removing appellate jurisdiction over Planning Board decisions from the Zoning Board of Appeals and placing it in the Superior Court. The articles were "applica-ble to all pending proceedings, applications and petitions commenced on or after February 3, 2010." As amended, the Zoning Ordinance unequivocally permits a direct appeal from the Planning Board to Superior Court.

Towns may alter zoning requirements and retroactively apply the changes to pending permit applications when the intent is clear and unequivocal. *See Kittery Retail Ventures, LLC v. Town of Kittery*, 2004 ME 65, ¶ 20, 856 A.2d 1183 (construing 1 M.R.S.A. § 302 (1989) as a default rule of statutory construction). Although there are grounds to object to the application of a retroactive ordinance amendment, none of the parties has done so in this case. *See Kittery Retail Ventures, LLC*, 2004 ME 65, ¶ 24, 856 A.2d 1183 (stating that the applicant "may acquire vested rights as a result of equitable considerations"); *Thomas v. Zoning Bd. of Appeals*, 381 A.2d 643, 647 (Me.1978) (rejecting a permit applicant's claim of vested rights, but considering wheth-

## II. DISCUSSION

[¶ 6] The Biziers raise two issues on appeal. First, they argue the Planning Board erred in concluding that the proposed grocery store and drive-through pharmacy would relate harmoniously to the surrounding terrain and structures, as the Zoning Ordinance requires. Second, they contend modifying the dimensions of Jordan's property would create an illegal back lot and, therefore, pursuant to section 2(F) of Turner's Zoning Ordinance,[2] Hannaford's permit may not issue. Because we conclude that the Board did not err, we affirm.

### A. Proposed Store's Harmonious Relation to Its Surrounding Environment

[¶ 7] Hannaford's plan will develop about 5.6 acres of the 7.8–acre proposed site, and the resulting building will be 36,000 square feet in a neighborhood where nearby residences have an average footprint of about 1000 square feet. As discussed above, the Biziers argue the Board erred in concluding that Hannaford's proposed structure relates harmoniously and in good scale with the natural

terrain and surrounding development of the area, as the Zoning Ordinance requires.

[¶ 8] We directly review the original Planning Board decision, without deference to the Superior Court's ruling on the intermediate appeal. *See Aydelott v. City of Portland,* 2010 ME 25, ¶ 9, 990 A.2d 1024; *Anderson v. Me. Pub. Emps. Ret. Sys.,* 2009 ME 134, ¶ 2, 985 A.2d 501 (appeal pursuant to M.R. Civ. P. 80C). Although interpretation of an ordinance is a question of law, we accord "substantial deference" to the Planning Board's characterizations and fact-findings as to what meets ordinance standards. *See Town of Vassalboro v. Barnett,* 2011 ME 21, ¶ 6, 13 A.3d 784 (quoting *Rudolph v. Golick,* 2010 ME 106, ¶¶ 8–9, 8 A.3d 684); *Jordan v. City of Ellsworth,* 2003 ME 82, ¶ 9, 828 A.2d 768. The Biziers bear the burden of persuasion because they seek to vacate the Board's decision. *See Anderson,* 2009 ME 134, ¶ 3, 985 A.2d 501.

[¶ 9] Section 5(E)(2) of the Zoning Ordinance lists the standards for whether a proposed structure relates harmoniously to its surroundings.[3] This section begins with a general mandate that "[p]roposed

---

er the municipality showed bad faith in amending the ordinance).

We conclude that the Town of Turner promulgated a valid amendment to its Zoning Ordinance, which permitted the direct appeal from the Planning Board to the Superior Court, and that the appeal is properly before us.

2. For consistency, we cite the 2009 version of the Turner Zoning Ordinance throughout this opinion. No differences between the 2009 version and subsequent versions material to the merits of this appeal have been brought to our attention.

3. The full text of Zoning Ordinance § 5(E)(2) (Apr. 4, 2009) reads:

**Relation of Proposed Buildings to Environment.** Proposed structures should be related harmoniously to the terrain and to existing buildings in the vicinity that have a visual relationship to the proposed structures so as to have a minimally adverse

[e]ffect on the environmental and aesthetic qualities of the developed and neighboring areas. The Planning Board shall consider the following criteria.

a. Architectural style is not restricted. Evaluation of the appearance of a project should be based on the quality of its design and relationship to surroundings.

b. Buildings should have good scale and be in harmonious conformance with permanent neighboring development.

c. Materials should have good architectural character and shall be selected for harmony of the building with adjoining buildings.

d. Materials should be selected for suitability to the type of buildings and the design in which they are used. Buildings shall have the same materials, or those that are architecturally harmonious, used for all building walls and other exterior building components wholly or partly visible from public ways.

structures should be related harmoniously to the terrain and to existing buildings … so as to have a minimally adverse [e]ffect on the environmental and aesthetic qualities of the developed and neighboring areas." *See* Turner, Me., Zoning Ordinance § 5(E)(2). Then, the section lists eleven criteria for the Board to consider. *See* Turner, Me., Zoning Ordinance § 5(E)(2)(a)-(k).

[¶ 10] The Biziers focus their argument on whether the proposed structure will be "related harmoniously" to the surrounding terrain and existing structures by referring almost exclusively to the size of the proposed building. They argue that a store thousands of square feet larger than the average surrounding residence cannot, as a matter of law, relate harmoniously to its surroundings. Contrary to their assertion, however, the Zoning Ordinance does not contain a numeric size limitation. *See* Turner, Me., Zoning Ordinance § 5(E)(2). Instead, the Zoning Ordinance's eleven criteria require the Board to consider a host of factors unrelated to size, such as architectural style, materials, building compo-

nents, colors, visibility of mechanical equipment, lighting, screening of service areas, and variation in design to prevent monotony. *See* Turner, Me., Zoning Ordinance § 5(E)(2). Moreover, this store will be built in the village district, where shopping centers are permitted with Board approval.[4] *See* Turner, Me., Zoning Ordinance § 3(H) at 3–16.

[¶ 11] During its consideration of the proposed project, the Board conducted a searching, exhaustive review of the Hannaford site plan, which included consideration of a variety of comments and additional information submitted by the Biziers. The Board accepted comments during at least two public hearings and throughout its evaluation of the project via written submissions from concerned citizens. Its findings of fact and conclusions of law span fifty-eight pages. The administrative record submitted to the Superior Court includes 163 documents, which fill seven bound volumes and easily total thousands of pages.[5]

■ [¶ 12] We will vacate a Planning Board's decision if it includes an error of

---

e. Materials should be of durable quality.

f. Building components, such as windows, doors and eaves, should have good proportions and relationships to one another.

g. Colors should be harmonious and shall use compatible accents.

h. Mechanical equipment or other utility hardware on roof, ground or buildings shall be screened from public view with materials harmonious with the building, or they shall be located so visibility from any public way is minimized.

i. Exterior lighting shall be part of the architectural concept. Fixtures, standards and all exposed accessories shall be harmonious with building design.

j. Refuse and waste removal areas, service yards, storage yards, and exterior work areas shall be screened from view from public ways, using materials as stated in criteria for equipment screening.

k. Monotony of design in single or multiple building projects shall be avoided. Variation of detail, form and siting shall be

used to provide visual interest. In multiple building projects, v[ar]iable siting [of] individual buildings may be used to prevent a monotonous appearance.

4. The Zoning Ordinance defines shopping center as "[a]ny concentration of two or more retail stores or service establishments under one ownership or management containing 15,000 square feet or more of gross floor space." *See* Turner, Me., Zoning Ordinance § 8 at 8–23 (Apr. 4, 2009). The scale of this category of contemplated structure supports our holding that the Board did not err in its conclusions.

5. Despite the Biziers' attempts to construe this issue as one of law, the Board's characterizations and fact-findings about whether the site meets Ordinance standards are entitled to "substantial deference." *See Jordan v. City of Ellsworth*, 2003 ME 82, ¶ 9, 828 A.2d 768.

law, abuse of discretion, or finding not supported by substantial evidence. *Rudolph*, 2010 ME 106, ¶ 8, 8 A.3d 684. On the issue of whether this project is harmonious and in good scale with the natural terrain and surrounding development of the area, the Board completed a careful, accurate review, and the record amply supports the Board's findings, which demonstrate neither error of law nor abuse of discretion. The Biziers have failed to meet their burden of persuading us that the Board's decision should be overturned.

### B. Creation of a Back Lot

**■** [¶ 13] The Biziers also argue the Board erred in failing to conclude that the Hannaford site plan would create an illegal back lot. As discussed above, Hannaford's purchase of a portion of the present Jordan lot will leave Jordan in possession of a lot with about sixty-five feet of frontage on Snell Hill Road. Jordan Lane will continue to run within this remaining strip of land to the balance of Jordan's land.

**■■** [¶ 14] We review the Planning Board's interpretation of the Zoning Ordinance's requirements de novo. *Aydelott*, 2010 ME 25, ¶ 10, 990 A.2d 1024; *Kittery Retail Ventures, LLC*, 2004 ME 65, ¶ 10, 856 A.2d 1183. We examine an ordinance for its plain meaning and "construe its terms reasonably in light of the purposes and objectives of the ordinance and its general structure." *Stewart v. Town of Sedgwick*, 2002 ME 81, ¶ 6, 797 A.2d 27. If an ordinance is clear on its face we will look no further than its plain meaning. *Rudolph*, 2010 ME 106, ¶ 9, 8 A.3d 684.

[¶ 15] The Biziers' argument that the project would transform the Jordan lot

into an illegal back lot is germane to Hannaford's site plan review permit because of the language in section 2(F) of the Zoning Ordinance:

### F. Illegal Reduction in Dimensions

No lot shall be reduced or created in any manner that violates the requirements of this Ordinance. If land is subdivided, conveyed, divided or otherwise transferred in violation of this Ordinance, no building permit or other municipal permit shall be issued with reference to any of the land or lots so reduced or created until all such land or lots fulfill the dimensional regulations, except as allowed by waiver or density bonus granted by the Planning Board in connection with the approval of a subdivision plan, multi-family dwellings, elderly and congregate housing complexes, affordable housing incentive or open space subdivisions.

Turner, Me., Zoning Ordinance § 2(F). Thus, Hannaford may not receive a permit for its project if the dimensions of the resulting Jordan lot do not comply with the Ordinance. *See* Turner, Me., Zoning Ordinance § 2(F).

[¶ 16] Jordan's land sits in the village district where section 3(I) requires one hundred feet of frontage. *See* Turner, Me., Zoning Ordinance § 3(I) at 3–21. Section 3(I) bars creation of new lots "below the minimum standards [including frontage] *unless allowed by other provisions of this ordinance.*" (emphasis added). Section 3(I) specifically notes that, "variations in bulk and space standards may be allowed by Section 4 of this ordinance."

[¶ 17] The resulting Jordan lot would have fewer than one hundred feet of frontage along Snell Hill Road,[6] and so, it would

---

6. We decline Hannaford's invitation to measure the required frontage along Jordan Lane. The Ordinance defines road frontage as "[t]he linear distance between the sidelines of a lot measured along the lot line that borders upon whatever right-of-way serves as legal access to the lot." Turner, Me., Zoning Ordinance § 8 at 8–12. Jordan Lane runs within the Jordan lot. Accordingly, there is no lot line along which to measure the frontage. *See Fitanides v. City of Saco*, 2004 ME 32, ¶ 35,

be a back lot.[7] Section 4(A) of the Ordinance addresses back lots:

**A. Back Lots**

Back lots may be developed for uses permitted in the district if they *are or can be provided with a right-of[-]way that connects with a public street* or a privately-owned street which privately-owned street meets the standards contained in Section VI.H. of the Town of Turner Street Construction Ordinance and which complies with the following provisions:

If a back lot is *accessible only by a legally enforceable right-of-way,* it may be used if [eight] conditions are met.

Turner, Me., Zoning Ordinance § 4(A) (emphasis added). This section of the Ordinance divides back lots into two varieties. The Ordinance imposes conditions on the use of certain back lots, specifically, those "accessible only by a legally enforceable right-of-way." *See* Turner, Me., Zoning Ordinance § 4(A).

[¶ 18] In this context, "legally enforceable right-of-way" means something other than ownership of property in fee simple. Pursuant to section 8 of the Zoning Ordinance, a right-of-way includes "[a]ll public or private roads and streets, state and federal highways, private ways (now called public easements), and public land reservations for the purpose of public access, including utility rights-of-way." *See* Turner, Me., Zoning Ordinance § 8 at 8–21. Modifying this definition with the phrase "legal-

ly enforceable" indicates a subcategory of right-of-ways held by non-fee owners. *See* Turner, Me., Zoning Ordinance § 4(A).

[¶ 19] Jordan owns his property in fee simple. Thus, the latter portion of section 4(A), which imposes conditions, is not applicable to his back lot. Jordan can access Snell Hill Road, a public street, via a right-of-way. Therefore, his lot satisfies all the requirements section 4(A) imposes on his type of back lot.

[¶ 20] We recognize section 4(A) uses the word "developed" and not "created" in its first sentence while section 2(F) uses the phrase "reduced or created." *Compare* Turner, Me., Zoning Ordinance § 4(A) *with* Turner, Me., Zoning Ordinance § 2(F). The Zoning Ordinance defines "development" as "[a]ny manmade changes to improved or unimproved real estate, including but not limited to, buildings or other structures, mining, dredging, filling, grading, paving, excavation, or drilling operations." Turner, Me., Zoning Ordinance § 8 at 8–7. Section 4(A) could be taken to apply only when manmade changes are made to back lots and not to the creation of back lots without manmade changes. When the two sections are read together, however, section 2(F)'s reference to "reduced or created" directly implicates Hannaford's plan here. Although development may not be occurring on the Jordan lot, section 2(F) indicates Hannaford's de-

---

843 A.2d 8 (noting that "[f]rontage cannot be measured along the proposed private road because there is no line separating the lot from the road if the road is part of the lot.").

**7.** Section 8 of the Zoning Ordinance defines back lot as "[a]ny lot or parcel of land that does not have frontage on a public road or privately-owned street meeting the standards contained in Section VI.H. of the Town of Turner Street Construction Ordinance or lacks the minimum frontage as required under Section 3.I of this Ordinance." *See* Tur-

ner, Me., Zoning Ordinance § 8 at 8–3. This definition identifies two attributes, and the absence of either indicates a back lot. Jordan's land possesses the first attribute in that it has frontage on a public road because Jordan's land runs to Snell Hill Road. Jordan's reduced lot would not possess the second attribute, however, because it "lacks the minimum frontage as required under Section 3.I of this Ordinance." *See* Turner, Me., Zoning Ordinance § 8 at 8–3. As such, the reduction in Jordan's land would create a back lot.

velopment requires an examination of any lots it creates.

[¶ 21] The Planning Board did not err in failing to conclude that the resulting Jordan lot would be an illegal back lot pursuant to the Zoning Ordinance. Although Jordan's new lot will be a back lot, it satisfies the requirements of section 4(A), which is an exception to the frontage requirements of section 3(I). As a result, the dimensions of the resulting Jordan lot do not bar the issuance of a site plan review permit to Hannaford.

The entry is:

Judgment affirmed.