*append.*
FNTERED AUG 2 9 2014

STATE OF MAINE
CUMBERLAND, ss

FRIENDS OF CONGRESS
SQUARE PARK, et al.

      Plaintiffs

      v.

CITY OF PORTLAND,

      Defendant

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. AP-13-055

JAW-CUM-08-18-14

ORDER ON MOTION
FOR AWARD OF
ATTORNEYS' FEES

STATE OF MAINE

AUG 18 2014

RECEIVED

Before the court is plaintiffs' motion for an award of attorneys' fees and costs. On May 6, 2014, the Law Court affirmed this court's decision finding in plaintiffs' favor on counts I and II of their complaint regarding the City's refusal to issue citizens' initiative petition forms. *Friends of Cong. Square Park v. City of Portland*, 2014 ME 63, ¶ 19, 91 A.3d 601. The parties stipulated that, if plaintiffs prevailed on appeal, the City is liable on count III of plaintiffs' complaint under 42 U.S.C. § 1983. *Id.* ¶ 5 n. 5. Under 42 U.S.C. § 1988, the court may award reasonable attorneys' fees to the prevailing party on a section 1983 claim. 42 U.S.C. § 1988 (2012); *Doe I v. Williams*, 2013 ME 24, ¶ 80, 61 A.3d 718. "Unless special circumstances would render such an award unjust, the general rule is that the prevailing party is entitled to an award of attorneys' fees." *IMS Health Corp. v. Schneider*, 901 F. Supp. 2d 172, 187 (D. Me. 2012) (quotation marks omitted).

The City argues that special circumstances make an award of attorneys' fees unjust in this case. "The special circumstances warranting the complete denial of attorneys' fees are narrowly circumscribed." *Cushing v. McKee*, 853 F. Supp. 2d 163, 171 (D. Me. 2012) (quotation marks omitted). Special circumstances

that permit the denial of a fee award "are few and far between." *De Jesus Nazario v. Morris Rodriguez*, 554 F.3d 196, 200 (1st Cir. 2009).

The City relies on *Schock v. United States*, which involved a claim for attorneys' fees under the Equal Access to Justice Act ("EAJA"), 42 U.S.C. § 2412. *Schock v. United States*, 254 F.3d 1 (1st Cir. 2001). The City argues that its position in this case was justified even though the City ultimately lost the case because the law in Maine was unclear on the distinction between legislative and administrative matters. Unlike § 1988, the EAJA requires a court to award fees "unless the court finds that the position of the United States was *substantially justified* or that special circumstances make an award unjust." 42 U.S.C. § 2412(d)(1)(A) (emphasis added). The "substantially justified" language is absent from 42 U.S.C. § 1988. *Schock* is therefore not relevant to this case.

Federal courts have held that "mere uncertainty in the law is not a 'special circumstance' justifying rejection of a statutory award of attorney fees in a civil rights action." *Northcross v. Bd. of Ed. of Memphis City Schs.*, 611 F.2d 624, 635 (6th Cir. 1979); *see also J & J Anderson, Inc. v. Town of Erie*, 767 F.2d 1469, 1474 (10th Cir. 1985) (stating that "good faith" and "uncertainty in the law" do not amount to special circumstances under § 1988). As the *Northcross* court explained, "[a] major purpose of the Fees Awards Act was to encourage the bringing of suits in new and undeveloped areas of civil rights law, and it would be anomalous indeed . . . to deny fees for the very reason the statute was passed." *Northcross*, 611 F.2d at 635. The City has failed to articulate a valid special circumstance to justify denying plaintiffs' fee award.

Furthermore, although the City contends that it acted in good faith to protect its rights in this case, the Court notes that the City withheld the citizens'

initiative petition forms without any legal justification.¹ *See Friends of Cong. Square Park*, 2014 ME 63, ¶ 4 n.3, 91 A.3d 601 ("The City Clerk does not have express authority to reject citizens' initiative proposals submitted in compliance with the petition procedure in the City Code on the grounds that they are not legislative.") The City forced plaintiffs to file suit and litigate on an expedited schedule just to obtain the requested petition forms. As the City concedes, municipalities must proceed with caution when constitutional rights are involved and should err on the side of ensuring the free exercise of political speech.

The City does not contest the reasonableness of plaintiffs' fee request, which is supported by affidavits from counsel. Accordingly, plaintiffs' motion is granted in full.

The entry is:

> Plaintiffs' motion for award of attorneys' fees is GRANTED.
>
> Plaintiffs are awarded their attorneys' fees and costs in the amount of $50,834.50, plus post-judgment interest at 6.16% calculated from the October 31, 2013 judgment.

Dated: August 18, 2014       _____
                              Joyce A. Wheeler
                              Justice, Superior Court

Plaintiffs-Sarah McDaniel Esq
         Robert Levin Esq
Defendant-Danielle West-Chuhta Esq
         Jennifer Thompson Esq

---

¹ Plaintiffs waived this argument, likely out of a desire to avoid further litigation.

STATE OF MAINE
CUMBERLAND, ss

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. AP-13-055
JAW—CUM— 10/31/2013

FRIENDS OF CONGRESS
SQUARE PARK, FRANK R.
TUREK, DAVID R. LaCASSE,
HERBERT C. ADAMS, and
PATRICIA M. O'DONNELL
    Plaintiffs

v.

CITY OF PORTLAND
    Defendant

ORDER ON 80B APPEAL
AND MOTION FOR
SUMMARY JUDGMENT

STATE OF MAINE
Cumberland Clerk's Office

OCT 31 2013

RECEIVED

Plaintiffs challenge the City of Portland's refusal to provide them the required petition forms to gather signatures for a ballot initiative under the Portland City Code.

## Factual and Procedural Background

Friends of Congress Square Park ("Friends") is a Maine nonprofit corporation incorporated on July 15, 2013. (Pls.' S.M.F. ¶ 2.) The individual plaintiffs are all Portland citizens, registered voters, and board directors or officers of Friends. (Pls.' S.M.F. ¶¶ 1, 3.) Friends was formed in response to a proposal in 2013 to sell a portion of Congress Square Park to a private developer. (Compl. ¶ 10.) The organization ultimately adopted a strategy of petitioning for a ballot initiative that would strengthen the current Land Bank ordinance to protect Congress Square and other city parks. (Compl. ¶ 11.)

The Land Bank Commission was established by the City Council in 1999. The Commission manages the Land Bank properties and recommends properties for potential Land Bank dedication. Under current law, the City Council alone has the authority to approve any new acquisitions or dispositions of Land Bank properties.

On September 6, 2013, plaintiffs submitted a citizen petition ("Park Initiative") to the Clerk of the City of Portland. (Pls.' S.M.F. ¶ 7.) The Park Initiative would accomplish three things: 1) establish a new category of land for Land Bank eligibility called "urban open public spaces," 2) designate 35 city-owned properties, including Congress Square Park, as Land Bank properties, and 3) strengthen the protections for all new and existing Land Bank properties. (Pls.' S.M.F. ¶ 7; Exhibit D.) On September 13, 2013, counsel for the City informed the plaintiffs that the City would not issue the petitions requested by plaintiffs because the initiative would affect administrative matters and because it related to "appropriations." (Pls.' S.M.F. ¶; Exhibit F.) On September 16, 2013, City Council voted 6-3 to approve the sale of Congress Square Park. (Pls.' S.M.F. ¶ 12.) The City entered into a purchase and sale agreement for the park on October 4, 2013. (Def.'s S.M.F. ¶ 34.)

Plaintiffs commenced this action on September 25, 2013 by filing an emergency motion for preliminary injunction asking the Court to order the City to issue the petitions. Plaintiffs alleged three counts. Count I is a Rule 80B appeal of government action, count II is an action for declaratory judgment and injunctive relief, and count III is a § 1983 claim. After a conference with counsel, the Court issued an order specifying the course of proceedings on September 30, 2013. The order stayed consideration of count III pending resolution of the first two counts. The Court accelerated the briefing deadlines for counts I and II and ordered the parties to submit their filings on the 80B appeal and declaratory judgment action in the form of a single motion for summary judgment.

2

1. Standard of Review

The Court reviews interpretations of local ordinances *de novo* as a question of law. *Aydellot v. City of Portland*, 2010 ME 25, ¶ 10, 990 A.2d 1024. In construing local ordinances, courts "look first to 'the plain meaning [of the ordinance] to give effect to the legislative intent.'" *Lewis v. Town of Rockport*, 2005 ME 44, ¶ 11, 870 A.2d 107 (quoting *Griffin v. Town of Dedham*, 2002 ME 105, ¶ 7, 799 A.2d 1239). "Any undefined or ambiguous terms in the Ordinance 'must be construed reasonably with regard to both the objects sought to be obtained and to the general structure of the ordinance as a whole.'" *Adams v. Town of Brunswick*, 2010 ME 7, ¶ 11, 987 A.2d 502 (quoting *Davis v. SBA Towers II, LLC*, 2009 ME 82, ¶ 10, 979 A.2d 86).

2. Ministerial Duty

Plaintiffs argue that the Code imposes a ministerial duty on the City Clerk to issue the petitions. Section 9-36 of the Portland Code outlines the procedure for invoking the initiative process. It requires petitioners to file an affidavit of registered voters who will circulate the petition, and then states:

> Upon filing of such affidavit by ten (10) such voters, the city clerk shall have seven (7) calendar days to prepare the proper petition forms pursuant to section 9-37 below with a copy of the submitted ordinance either printed on the petition or attached thereto and shall provide such petition to members of the petitioners' committee and to any other registered city voter who wishes to circulate it.

Code of Ordinances, City of Portland, Me ("Code") § 9-36(c) (eff. July 17, 2007). The plaintiffs point to the Code's own rules of construction, which instruct that "[t]he word 'shall' is mandatory." Code § 1-2; *see also Casco N. Bank, N.A. v. Bd. of Trs. of Van*

3

*Buren Hosp. Dist.*, 601 A.2d 1085, 1087 (Me. 1992) ("[T]he word 'shall' is to be construed as 'must' for the purpose of sustaining or enforcing an existing right.").

The City argues that the application of Code § 9-36(c) is constrained by the limitations found in the preceding Code subsections. Section 9-36(a) provides that the initiative process extends to "any proposed ordinance dealing with legislative matters on municipal affairs." Section 9-36(b) states: "Neither this article nor ordinances dealing with appropriations, tax levy, or with wages or hours of city employees shall be subject to the initiative and 'people's veto' referendum provisions herein established." The City contends that the initiative must satisfy these code sections before the City Clerk is required to issue the petitions.

In *Wyman v. Secretary of State*, the Law Court considered limitations on the statewide initiative process in Maine. *Wyman v. Sec'y of State*, 625 A.2d 307, 310 (Me. 1993) The court found that "although the right to invoke an initiative is a state-created right, it does not follow that the state is free to impose limitations on that right without satisfying the dictates of the first amendment." *Id.* at 311. In *Wyman*, the Secretary had concerns about the legality of the proposed law, but the court held that "the potential invalidity of the subject of an initiative petition . . . is not a sufficient reason to pre-empt the petition process itself or to bar the discussion of the issues raised in the petition." *Id.* at 311. The court further found that "the Secretary's concerns of voter confusion and wasted resources if potentially invalid questions are included on the ballot are not implicated during the initial signature collection phase." *Id.*

4

The City reads *Wyman* to prohibit pre-screening initiative petitions only on the substance of the proposed legislation, where the right to petition is otherwise clearly available. Here, the City argues, the issue is whether the right to petition exists at all. It relies on *Palesky v. Town of Topsham*, where the Superior Court held that "town officials cannot, despite the mandatory language contained in the Town Meetings and Elections subchapter to Title 30-A, be required to undertake actions which are illegal, fruitless, or unauthorized." *Palesky v. Town of Topsham*, 1994 Me. Super. LEXIS 334, at *7-8 (Aug. 25, 1994). The court explained, "[t]o interpret § 2528(5) to eliminate any discretion on the part of the town's officials simply because a petition with sufficient signatures is presented, regardless of the incomprehensible, illegal, or unenforceable nature of the language sought to be added to the warrant, would invite chaos into town government." *Id* at *8.

At oral argument, plaintiffs conceded that the City Clerk could lawfully refuse to issue petitions for initiatives that are not authorized by the City Code. While the Court has concerns about the City Clerk exercising discretion to "pre-empt the petition process itself," the Court will assume without deciding that the Clerk could refuse to issue petitions for initiatives that are not authorized by the Code. Accordingly, the Court will look to whether the Park Initiative complies with the initiatives provision of the City Code.

3. Administrative vs. Legislative Matter

The City first argues that the Park Initiative improperly affects administrative or executive matters. Under the initiatives provision of the Code, voters may petition for "any proposed ordinance dealing with legislative matters on municipal affairs." Code § 9-

5

36(a). The City reads this provision to prohibit initiatives that affect an administrative function.

In *Albert v. Town of Fairfield*, the Law Court considered a referendum "overturning the town council's acceptance of a town way." *Albert v. Town of Fairfield*, 597 A.2d 1353, 1354 (Me. 1991). The Town of Fairfield's charter provided:

> The qualified voters of the Town shall have power to require reconsideration by the council of any adopted Action and, if the Council fails to repeal an Action so reconsidered, then to approve or reject it at a Town Election.

*Id.* The court explained the legislative versus administrative act distinction:

> In other jurisdictions, the power of referendum is usually defined as restricted to legislative measures and does not extend to executive or administrative action taken by a municipality. *See* 5 E. McQuillin, *The Law of Municipal Corporations* § 16.55 (3d ed. 1989). Our law does not explicitly include such a distinction. In Maine, the constitutional grant of the power of referendum permits a municipality to "establish the direct initiative and people's veto for the electors of such city in regard to its *municipal affairs* ...." Me.Const., art. IV, pt. 3, § 21 (emphasis added). In *Burkett v. Youngs,* 135 Me. 459, 464, 199 A. 619, 621 (1938), we defined "municipal affairs" as "compris[ing] the internal business of a municipality" and described the referendum as affecting "only those ordinances and resolves that are municipal legislation." Thus far, we have attempted to distinguish between state and local affairs rather than between legislative and administrative action.

*Id.* (footnote omitted). The Court concluded:

> Whether the analysis is premised on municipal versus state affairs or legislative versus administrative duties, the goal remains the same: identify those areas in which the municipality has been given the discretion to do as it wishes. In such areas, the action of the municipality's legislative body is subject to the referendum procedure.

*Id.* at 1355.

The City attempts to sidestep *Albert* by pointing to the language of Code § 9-36(a), which authorizes petitions on "any proposed ordinance dealing with *legislative matters* . . . ." (emphasis added). The City argues that this reference to legislative matters

6

in the City Code restricts voter initiatives from reaching "administrative" matters in a way that the Fairfield code in *Albert* did not. Given the broad language in *Albert*, however, the reference to "legislative matters" in the Code plainly refers to legislation that the Portland City Council has the power to enact. Moreover, Code § 9-36(b) outlines the applicability of the initiative process and does not make any mention of administrative versus legislative matters.

Under current law, the City Council alone has the authority to dedicate properties into the Land Bank. *See* Code § 2-42(a) ("All acquisitions of property interests under this article shall be subject to the approval of the City Council . . . ."). While the Land Bank Commission serves an advisory function in recommending properties for Land Bank protection, it is ultimately the City Council that must vote on their approval. The Court therefore finds that, to the extent the City Code requires initiatives to be on "legislative matters," the Park Initiative satisfies this requirement.[1]

---

[1] Even accepting the City's position that the City Code prohibits initiatives that affect administrative functions, the cases on which the City relies are distinguishable from the present case. The City relies on two California cases to establish that voter initiatives cannot touch on administrative matters. Both cases involved voter initiatives that sought to modify policies previously adopted by voter initiatives. *City of San Diego v. Dunkl*, 86 Cal. App. 4th 384, 389-90 (2001); *Citizens for Jobs and the Economy v. County of Orange*, 94 Cal. App. 4th 1311, 1333 (2002). In those cases, the court found the proposed initiatives improperly attempted to change policy-implementing decisions that had been committed to administrative discretion. *Dunkl*, 86 Cal. App. 4th at 402; *Citizens for Jobs*, 94 Cal. App. 4th at 1333.

Unlike the initiatives in the California cases, the Park Initiative does not seek to implicitly negate prior policy. In both *Dunkl* and *Citizens for Jobs*, the court was concerned that the initiatives did not explicitly reverse prior policy. Rather, the initiatives sought to dictate results under policies already in effect. *See Dunkl*, 86 Cal. App. 4th at 402 ("The proposed initiative does not seek to change this policy by its plain language, but rather to change the substance of the implementing decisions that were created by Prop. C."); *see also Citizens for Jobs*, 94 Cal. App. 4th at 1333 ("Measure F, as approved, would not have sought to change this policy by its plain language, but rather would have changed the procedure and substance of the implementing decisions that were created by Measure A."). The Park Initiative does not simply change the procedure and the substance of implementing the Land Bank ordinance, it actually changes the ordinance to protect a new category of properties. That the Park Initiative would also change the procedure for disposing of properties is part of its stated goal: to strengthen protections for Portland's public spaces. The Park Initiative therefore explicitly changes policy unlike the initiatives in the California cases.

4. Whether the Park Initiative affects "Appropriations"

The City next argues that the Park Initiative improperly affects "appropriations," a category restricted by Code § 9-36(b). The City quotes dictionary definitions of "appropriation" that encompass control over property. For example, one definition of "appropriation" in Black's Law Dictionary is: "The exercise of control over property; taking of possession." *Black's Law Dictionary* 98 (7th ed. 1999).[2]

The City's argument ignores the principle that the Court must "construe disputed language reasonably and with regard to both the ordinance's specific object and its general structure" and must "give undefined terms their common and generally accepted meaning unless indicated otherwise by their context in the ordinance." *DeSomma v. Town of Casco*, 2000 ME 113, ¶ 9, 755 A.2d 485 (internal citations and quotations omitted). In the legislative context, an appropriation typically means "[a] legislative body's act of setting aside a sum of money for a public purpose." *Black's Law Dictionary* (9th ed. 2009). Plaintiffs point to eleven other sections of the Code that reference appropriations, and every one of them relates to City expenditures. (Pls.' S.M.F. ¶ 30.) Moreover, the other initiative restrictions contained in Code § 9-36(b), matters dealing with "tax levy, or with wages or hours of city employees," also relate to the City's fiscal affairs. The logical intent behind Code § 9-36(b)'s restrictions on the ballot initiative process is to exclude matters that would require the City to spend or collect money. *See* 42 Am. Jur. 2d *Initiative and Referendum* § 11 (2013) ("The basic purpose of excluding specific appropriation measures from the initiative process under a state constitution is to preserve the legislature's general authority over the state treasury and to preclude special interest

---

[2] The Court rejects the City's definition of "appropriation" in this context, but even if it were to accept it, the term thus defined is typically used in reference to the legislature's power of eminent domain. *See, e.g.,* 23 M.R.S.A. § 3023. The plaintiffs' proposed ordinance does not affect the eminent domain power.

8

groups from attempting to usurp that authority through the use of initiatives which might compel the expenditure of public funds in a piecemeal fashion.") If the City intended to exclude land use or property matters from the voter initiative process, it would have done so explicitly.

If approved, the Park Initiative would not require the City to make any expenditures.[3] While it does restrict the power of the City Council to sell city-owned property, "a prohibition against initiatives that appropriate public assets does not extend to initiatives that regulate public assets so long as the regulations do not result in the allocation of an asset entirely to one group at the expense of another." 42 Am. Jur. *Initiative and Referendum* § 11 (2013). The Park Initiative regulates the City's assets to preserve them for the public. Since the measure has no other fiscal impact, the Court rejects the City's argument that the initiative affects appropriations.

5. People's Veto

Finally, the City argues that the plaintiffs' petition is in reality an invalid people's veto of a City Council Order. Unlike an initiative, which proposes new legislation, a "people's veto" is a "petition to override any ordinance passed by the city council but which has not yet gone into effect." Code § 9-36(a). The City contends that the petition attempts to raise a people's veto question on the issue of whether the City should sell Congress Square Park. The City argues this is improper because only ordinances, and not orders, passed by the City Council are not subject to the people's veto process. If the plaintiffs had petitioned for a people's veto the City might have a valid point, but that is not the case here.

---

[3] All 35 of the properties proposed for dedication to the Land Bank are city-owned properties. They are predominantly city parks, including areas such as Deering Oaks Park and the Eastern Promenade Park. (Exhibit D).

9

The Code specifically authorizes "a retroactive effective date of an initiated ordinance, to the extent permitted by law, if such retroactive date is specifically provided for in the petition and/or the question approved by the voters." Code § 9-42. The retroactive date "shall not be earlier than the date of filing of the affidavit originating the petition which is finally submitted to the voters." *Id.* Thus, by the plain language of the Code, the plaintiffs were authorized to make the initiative retroactive to the date of filing with the City Clerk, which in this case was September 6, 2013. (Pls.' S.M.F. ¶ 7.) The City Council did not approve the sale of Congress Square Park until September 16, 2013 (Pls.' S.M.F. ¶ 12.) Thus, the plaintiffs' petition cannot be a people's veto because it was filed with the City Clerk before the City Council voted to sell Congress Square Park.

Conclusion

Having considered the complaint, the motions, briefs, and the arguments of counsel, the Court finds in favor of plaintiffs on count I and count II and concludes that a permanent injunction should issue and for its reasons states as follows:

A. The Park Initiative constitutes a matter that is a proper subject of a citizens' initiative under Section 9-36 of the City of Portland Code of Ordinances

B. Pursuant to Rule 65(d) of the Maine Rules of Civil Procedure, therefore, it is hereby **ORDERED** that Defendant City of Portland, its agents, servants, employees, and attorneys, and all other persons in active concert or participation with them, are hereby enjoined and restrained as follows:

> The City of Portland, acting by and through its City Clerk, is **ORDERED AND DIRECTED** to prepare and issue to Attorney Robert C. Levin, attorney for the petitioners' committee, **on or before 3:00pm on Friday November 1, 2013** the petition forms for the Park Initiative that was filed by plaintiffs with the City Clerk on September 6, 2013.

Date:   October 31, 2013

_____
Joyce A. Wheeler
Justice, Superior Court

Friends-Sarah McDaniel Esq
Robert Levin Esq
City-Danielle West-Chuhta Esq
Jennifer Thompson Esq

10

STATE OF MAINE
CUMBERLAND, ss

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. AP-13-055
JAW-CuM- 11/4/2013

FRIENDS OF CONGRESS
SQUARE PARK, et al.,
    Plaintiffs

vs.

ORDER ON MOTION FOR STAY

CITY OF PORTLAND
    Defendant

STATE OF MAINE
Cumberland, ss Clerk's Office

NOV 04 2013

RECEIVED

On October 31, 2013, the court issued an Order in favor of the plaintiffs on Counts I and II of their Complaint and ordered the City to prepare and issue the petition forms for the Park Initiative that was filed by plaintiffs with the City Clerk on September 6, 2013.

The effect of the City's motion for a stay is to ask this court to balance the issuance of potentially unauthorized petitions with the deprivation of the right to petition the government. In order to preserve the status quo and to insure effectiveness of any eventual judgment, the City argues, a stay must be granted pursuant to M.R.Civ.P. 62(d). The only harms cited by the City include confusion and that once the City Clerk issues the petition forms, there is no mechanism to prevent putting the Park Initiative to the voters. This is not true if the Law Court acts expeditiously in favor of the City because the earliest this issue may be put to the voters is on a June 2014 ballot. Moreover, even if the City prevails, the City only needs a day to prepare the appropriate ballots. In any event, in *Wyman v. Secretary of State*, 625 A. 2d 307 (Me. 1993), the Law Court held that

"the potential invalidity of the subject of an initiative petition . . . is not a sufficient reason to pre-empt the petition process itself or to bar the discussion of the issues raised in the petition." *Id.* at 311. This is what the City has attempted to do.

The Order does not require the City to undertake actions that are illegal, fruitless or unauthorized. Rather, the court held that the Park Initiative constitutes a matter that is the proper subject of a citizens' initiative under Section 9-36 of the City of Portland Code of Ordinances and ordered the City to issue the petition forms for the Park Initiative that were filed by the plaintiffs with the City Clerk. The City's failure to do so deprives the citizens of their right to petition the government and bars the discussion of the issues raised in the petition. This deprivation can never be undone and causes irreparable harm to the first amendment rights of the citizens.

The entry is:

1. Order on 80B Appeal and Motion for Summary Judgment remains in full force and effect except as modified below.

2. The City's motion for a stay is **DENIED**.

3. Pursuant to Rule 54(b)(2), since the only outstanding claim is for attorney's fees, Judgment on Counts I and II shall be final.

4. Pursuant to M.R.Civ.P. 65(d) the City of Portland, its agents, servants, employees, and attorneys, and all other persons in active concert or participation with them, and hereby enjoined and restrained as follows and the City of Portland, acting by and through its City Clerk, is **ORDERED AND DIRECTED** to prepare and issue to Robert C. Levin, Esq,, attorney for plaintiffs, on or before **4:00 p.m. on Monday, November 4, 2013** the

2

petition forms for the Park Initiative that was filed by plaintiffs with the

City Clerk on September 6, 2013.

Date: November 4, 2013

_____

Joyce A. Wheeler
Justice, Superior Court

Friends–Sarah McDaniel Esq
     –Robert Levin Esq
City–Jennifer Thompson Esq
     –Danielle West–Chuhta Esq

3

**ATTORNEY**

**For Plaintiff**

DONALD FONTAINE, ESQ.
LAW OFFICES OF DONALD F. FONTAINE
PO BOX 7590
PORTLAND, ME 04112

HILLARY SCHWAB, ESQ. (PRO HAC VICE)
FAIR WORK, P.C.
192 SOUTH STREET
SUITE 450
BOSTON, MA 02111

HAROLD LICHTEN, ESQ. &
SARA SMOLIK, ESQ. (PRO HAC VICE)
LICHTEN & LISS-RIORDAN, P.C.
100 CAMBRIDGE STREET
20TH FLOOR
BOSTON, MA 02114


**For Defendants RB Portland LLC and Portland II Hotel Management LLC**

JAMES ERWIN, ESQ.
PIERCE ATWOOD
MERRILLS WHARF
254 COMMERCIAL STREET
PORTLAND, ME 04101

**For Defendant MHG Portland LLC**

JONATHAN SHAPIRO, ESQ.
FISHER & PHILLIPS LLP
ONE MONUMENT SQUARE
SUITE 600
PORTLAND, ME 04101