STATE OF MAINE                    SUPERIOR COURT
KENNEBEC, SS.                        CIVIL ACTION
                                DOCKET NO- AP-2016-57


REAY EXCAVATION &
TRUCKING, INC.,
        Plaintiff
                                **DECISION AND ORDER**
V.

TOWN OF READFIELD,
        Defendant

and

CUSHING CONSTRUCTION, LLC.,
        Interested Party

## INTRODUCTION AND PROCEDURAL HISTORY

The matter before the court is the Plaintiff's Complaint against the Town of Readfield brought pursuant to M.R.Civ.P. 80B to overturn the decisions of the Readfield Select Board (a) awarding the Town's Snow and Ice Control Contract from October 1, 2016 through May 1, 2020 to Cushing Construction, LLC., and; (b) refusing to accept or open a bid from the Plaintiff for said contract because of an alleged conflict of interest.

The Plaintiff's Complaint was filed on September 21, 2016. The Administrative Record was originally filed on October 20, 2016. Also on October 20, 2016, the Plaintiff filed a Motion For Trial and For Order Regarding Future Course of Proceedings in accordance with M.R.Civ.P. 80B(d). The Town opposed the motion. A hearing on the motion was held on April 5, 2017 at which time the court directed the parties to cooperate with each other to augment the administrative record. The court also allowed the Plaintiff to submit an offer of proof "specifically identifying what evidence of bias the Plaintiff is seeking to uncover . . . ."

The Plaintiff filed its Offer of Proof on April 13, 2017 and an Amended Offer of Proof on May 5, 2017. Also on May 5, 2017 the parties filed a Stipulation of Facts with an augmented administrative record. The Town filed an opposition to the Amended Offer of Proof on May 10, 2017. By agreement of the parties a memory card of several portions/segments of meetings of the Readfield Select Board has been made part of the record.[1]

In an Order dated May 15, 2017 the court denied the Plaintiff's Motion For Trial and For Order Regarding Future Course of Proceedings, and directed the parties to submit their

---

[1] The memory card contains four video clips, which the court has viewed. The four clips are: (1) May 16, 2016 Select Board meeting with Town Manager Eric Dyer; (2) July 29, 2015 Select Board meeting appointing Lenny Reay to the Road Committee; (3) August 22, 2016 public comment portion of the Select Board meeting on that date, and; (4) August 22, 2016 Select Board meeting at which Cushing Construction LLC. was awarded the contract.

2

briefs on the merits. Briefing was completed on August 10, 2017. A hearing on the Plaintiff's Rule 80B appeal was held on September 6, 2017. The matter is now in order for decision.

## FACTS

The court's review of the augmented Administrative Record, including the Stipulation of Facts and the video clips, shows the following.

At a meeting of the Readfield Select Board held on July 29, 2015 Lenny Reay of Reay Excavation & Trucking, Inc., the Plaintiff in this action, was appointed as a member of the Readfield Road Committee. Prior to the vote on his appointment, Mr. Reay wanted it known that his son did work for McGee Construction, and that Mr. Reay allowed a McGee Construction vehicle to be parked on his property. At the time, McGee Construction performed the snow and ice control work for the Town of Readfield under a contract that was due to expire on May 1, 2016. Mr. Reay wanted that known so that there would be no concern or suggestion of a conflict of interest.

The Select Board members uniformly agreed that the situation involving Mr. Reay's son and the latter's work for McGee Construction did not constitute a conflict of interest. One Board member also expressed the view that there would be no conflict of interest if Mr. Reay and his company were to bid to

3

perform work for the town, provided that he made an appropriate disclosure and recused himself from voting on any matter as a member of the Road Committee. (See Video Clip # 2).

As noted above, McGee Construction had the snow and ice control contract with the town through May 1, 2016. Thus, in the spring of 2016 the Town Manager, Eric Dyer, began planning for putting the new snow and ice control contract out to bid. At the April 28, 2016 Road Committee meeting, the members were told that the Town Manager would "forward information on snow plowing RFP for discussion at next meeting," scheduled for May 12, 2016. (R. at 136).

The Road Committee meeting originally scheduled for May 12, 2016, however, was postponed to a later date. The Select Board was scheduled to meet on May 16, 2016 and the Town Manager planned on reviewing the snow plow bid documents with the Select Board at that meeting. In an e-mail dated May 13, 2016 to the members of the Road Committee, the Town Manager included a link to the "Select Board packet" and further wrote:

> Although the Road Committee was originally going to review the draft paving and winter maintenance bids before the Select Board, the change in meeting date dictates that the SB will review the [sic] them prior to your meeting next week. However, I wanted to get them to you at the same time so you can review them as well. They are included in the SB packet but I've also attached them here as PDF files so they are easier to

4

read and in color (more relevant to the winter maintenance bid).

(R. at 31).

On May 16, 2016 Mr. Reay wrote the following-mail to the Select Board, the Road Committee and the Town Manager:

> As a road committee member I am really trying to understand what our role is. All these RFP's that are before the select board tonight have not even been looked at by the road committee for a recommendation. In my opinion this snow plowing RFP, that is a draft before the select board, is definitely something that would deter bidders from bidding. This contract is micro managing the contractor in the extreme. The select board has a role of overseeing the contractors, yet this contract eliminates that. If the road committee is not going to be giving recommendations as we are suppose [sic] to, maybe we shouldn't even have a committee. I don't know who's [sic] input was given in the writing of this contract, but as a contractor, I would not expect someone else to decide what my price would be nor what my employees do.
>
> This contract needs to be totally redrafted and the road committee needs to meet prior to drafts going before the select board. If we can't have a full committee to review, if we at least have a quorum the meeting should take prior.
>
> I would hope that the select board will take a very active role in correcting this issue.

(R. at 30).

Later in the day on May 16, 2016, the Town Manager sent the following e-mail to Mr. Reay and the members of the Select Board:

Good Afternoon Lenny,

I'd like to request that future concerns be addressed through the appropriate channels before they are sent along to the Select Board. Namely the Committee Chair and myself as appropriate. This is standard expectation and practice that helps streamline communications. For example you might have known that Larry [Perkins, the Road Committee Chair] and I met last week and that Larry requested the meeting change, etc.

I'd also like to know if you plan on bidding on the winter maintenance contract, as this is an important consideration. If you are, our Conflict of Interest Ordinance precludes your involvement in setting the parameters for the contract and bid award.

(*Id.*).

The Town Manager sent another e-mail on May 16, 2016 to the members of the Select Board and the Road Committee in which he explained that he had spoken with the Chair of the Road Committee (Mr. Perkins) "about the Select Board reviewing the draft RFPs prior to the RC." He noted that both he and the Road Committee Chair felt that "this was not an issue." He further observed that he would be meeting with the Road Committee later that week. The Town Manager further stated that the winter

6

maintenance draft contract "was based heavily on the prior agreement as well as standard practices." He summarized the proposed changes to the winter maintenance contract and bid documents. He pointed out that the Select Board was "taking a first pass" at the documents and he anticipated that the changes would be subject to further review and comment "from many different groups and individuals." (R. at 32).

At the May 16, 2016 Select Board meeting, the video of which the court has viewed in its entirety, the Town Manager explained that the bid documents pertaining to the winter maintenance contract were in the initial stages and had not been formally reviewed by the Road Committee. He noted that he had spoken with McGee Construction, which held the recently expired contract for winter maintenance, to receive input as to what worked well and what potential improvements could be made. The Select Board meeting on this subject lasted approximately 40 minutes and involved detailed consideration of the draft documents, with several board members asking questions, seeking clarification and making suggestions and recommendations.

The Town Manager explained to the Select Board that the winter maintenance contract for Readfield was one of the most expensive costs for the town and that Readfield's costs were significantly higher than neighboring communities. The manager

also pointed out that the draft documents would raise a number of questions because he was trying to approach the winter maintenance contract from a different perspective in an effort to better control costs over the multiple year term of the contract.

The Road Committee met on May 19, 2016. Both the Town Manager and Mr. Reay were in attendance. The minutes of that meeting reflect the following:

> Reviewed draft RFP for snowplowing contract. Eric questions if Lenny should provide guidance if he is also going to bid on the contract. Several members expressed desire to hear Lenny's comments because of his experience. Lenny said he will not bid on the snow removal contract.

(R. at 45).

The minutes further reflect that Mr. Reay fully participated in the meeting and made suggestions for the improvement of the RFP. Although it is not entirely clear from the administrative record, it is apparent that there was some type of off-the-record exchange involving the Town Manager and Mr. Reay. This is made obvious by a May 20, 2016 email from Town Manager Eric Dyer to the Chair of the Road Committee and to Tom Dunham, a Select Board member who had attended the Road Committee meeting. The e-mail reads as follows:

Good morning Larry and Tom,

8

I had apologized to Lenny at the meeting but I also want to apologize directly to the both of you for my comment last night. I regret very much dropping to that level and suggesting that I wouldn't listen to Lenny because he said he wouldn't work with me because he didn't like me. My response was certainly not what I expect from myself in those situations.

I was concerned about the integrity of the process and following our Conflict of Interest Ordinance. When he said that he would not be bidding those concerns were resolved. I just wish he had said so sooner, or responded to the email I had sent earlier. Doing so could have entirely avoided the flare-up around that issue, but I again want to apologize for my response to it.

(R. at 34).

The Road Committee met again on June 23, 2016. Mr. Reay and the Town Manager attended. The minutes of that meeting reflect that the "Committee reviewed in detail Draft 2 for snow plow contract." Another meeting was scheduled for July 6, 2016 for the Committee "to review paving bids and to review final plowing RFP." (R. at 46).

On the afternoon of July 6, 2016, the Town Manager sent the members of the Road Committee Draft 3 of the winter snow and ice control RFP, which incorporated changes that "directly reflect recommendations from the last RC meeting." (R. at 35). The Road Committee met as scheduled at 6:00 pm on July 6, 2016. Both Mr. Reay and the Town Manager were in attendance. The

minutes of that meeting indicate that the Committee engaged in a "[l]engthy review of the recently issued draft RFP for snow and ice control – next 4 years." The Road Committee "approved the new changes to the snow plowing RFP," with Mr. Reay abstaining. (R. at 47).

Although not reflected in the minutes of the Road Committee meeting of July 6, 2016, it appears that the issue of a potential conflict of interest arising, if Mr. Reay submitted a bid on the snowplowing contract, was discussed at the meeting. This is made apparent in an a-mail from the Town Manager on July 7, 2016 to the Road Committee, and others, that was a follow-up "in response to questions and discussions at the Road Committee meeting last night as they relate to the Snow and Ice Control Contract." With respect to the conflict of interest question, Mr. Dyer wrote as follows:

> It was again raised whether Lenny Reay or someone in his family could bid on the contract given Lenny's significant involvement in developing the contract. As noted before, our Conflict of Interest and Recall Ordinance does not allow for this. It is also strongly discouraged by the Maine Municipal Association and is not a good governance practice. I have attached our Ordinance for reference. Maintaining the integrity of the contract and bidding process is critical in *perception* just as much in *reality* and our Ordinance ensures that it is. It is also not optional.

10

(R. at 39) (italics in original).

The record does not provide a date when the Snow and Ice Control Pre-bid Meeting was held, but it does reflect that Mr. Reay attended that meeting on behalf on his company. (R. at 49). Moreover, on July 30, 2016, Mr. Reay asked the Chair of the Road Committee to request the Select Board to obtain a ruling from the Maine Municipal Association as to whether he would be in a conflict of interest situation if he submitted a bid for the snow plowing contract. (R. at 42). In an e-mail dated August 1, 2016 the Chair of the Road Committee obliged Mr. Reay by asking the Select Board to "seek a ruling from MMA as to whether Lenny Reay would be in a conflict of interest per the town ordinance if his company submits a bid on the snow and ice control contract RFP." The Chair pointed out that bids on the winter maintenance/snowplowing contract were due on August 11, 2016. (R. at 41).

In an e-mail dated August 3, 2016, the Town Manager made his position clear on the question of whether Mr. Reay could submit a bid for the Snow and Ice Control contract. He informed Mr. Reay as follows:

Good morning Lenny,

I am writing to address the conflict of interest that exists around the Snow and Ice Control Contract in

11

order to give you clear direction and timely information. I do not want you to have any surprises or unnecessarily waste time and financial resources in putting together a bid.

Although your recent communications have been directed to the Select Board they do not have the ability to make decisions outside of public meetings.

Given the conflict of interest that exists and the need to maintain the integrity of the bidding process, I will not be accepting a bid from your company or immediate family members for the Snow and Ice Control Contract.

(R. at 43).

On August 8, 2016, a regular meeting of the Readfield Select Board was held.[2] The minutes of that meeting address the conflict of interest issue as it pertained to Mr. Reay at two points in the meeting. In the section of the minutes entitled "Public Communications," the minutes state that Mr. Reay spoke to the Select Board and wanted to know if a bid from him would be accepted. The Town Manager "expressed his concerns regarding the conflict of interest." The Chair of the Select Board "addressed the concern and let him [Mr. Reay] know that the process has been determined and this is not on the agenda tonight."[3] (R. at 51).

---

[2] As far as the court can tell, the August 8, 2016 Select Board meeting was not included in the video clips on the memory card submitted as part of the record in this case.

[3] It is not clear to the court whether this is a typographical error since the question of whether there was a conflict of interest if Mr. Reay submitted a bid on the Snow and Ice Control Contract was considered and voted on by the Select Board later in the meeting of August 8, 2016.

12

Nevertheless, later in the meeting of August 8, 2016 the subject of the Conflict of Interest Ordinance was discussed. Mr. Dyer "spoke as the Town Manager and Road Committee Manager," and gave his view on the matter. Mr. Reay spoke again "and wanted to know what he contributed to make his bid not acceptable." Ultimately, a motion was made and seconded "to back up the Road Commissioner [4][sic] with his decision that there is a conflict of interest." The motion passed by a 4 to 1 vote of the Select Board. (R. at 53).

The bid opening for the Snow and Ice Control contract was scheduled for 3:00 p.m. on August 11, 2016. At 11:00 a.m. that day, the Chair of the Road Committee (Larry Perkins) received a letter from Lenny Reay resigning immediately from the Road Committee. (R. at 63). Mr. Perkins promptly notified the Select Board of this development. (R. at 44). When the Town Manager became aware of Mr. Reay's resignation, he sent the following e-mail to the Select Board with a copy to Mr. Reay:

Hi Larry,

Thank you. I am sorry to see this. As I've stated multiple times in the past, Lenny's involvement with the Road Committee is not an inherent conflict and his specialized knowledge is an asset to the work of that committee. The conflict came about because of his

---

[4] The court assumes that the "Road Commissioner" mentioned in the minutes refers to the Town Manager in his capacity as Road Committee Manager.

13

significant involvement with the development of a potentially 1.25 Million dollar snow and ice control contract under a false pretense. If he had recused himself from the contract development entirely, or honored his statement that he would not bid then no conflict would exist. He had this information prior to the contract development process and chose to ignore it. The issue is not and never has been his membership on the Road Committee, nor is it related to politics or vendettas. The issue is his repeated choice to willfully disregard a Town Ordinance and nearly universal ethical standards around contract development and bidding.

To be clear on a core issue, Lenny's resignation does not resolve his conflict of interest. A bid will still not be accepted from Reay Excavation for the contract that he played a significant role in developing.

(R. at 44).

The bids were opened at 3:00 p.m. on August 11, 2016. Bids were received and opened from McGee Construction and Cushing Construction. The minutes of the Road Committee during the bid opening state: "Reay Excavation submitted a bid but the Town Manager refused to open it as non-responsive due to perceived conflict of interest."[5] The Committee voted 3-0-1 (Mr. Reay abstained) to recommend selection of Cushing's bid. (R. at 55).[6]

---

[5] It was suggested that the bid from the Plaintiff be received and stored "for possible legal defense." The Road Committee minutes reflect that: "Eric says Town Counsel told him to not open the bid but simply return to Reays." (R. at 55).

[6] Although Mr. Reay's letter of resignation stated that he was resigning from the Road Committee "immediately" he apparently attended the Road Committee meeting later in

Later in the day on August 11, Sue Reay, Lenny's wife, wrote an e-mail to the Town Manager asking that he "give me the significant input that you feel my husband had in this RFP." The Town Manager replied the next day, stating "[t]his question has been addressed previously." Mrs. Reay wrote again on August 12, 2016 disputing the Town Manager's assertion that Lenny Reay had "significant" involvement in the RFP development process, and asking "[e]xactly what did he put on the table that was incorporated into the contract?" The Town Manager responded: "You have my answer." (R. at 37).

The Road Committee met again on August 16, 2016. Mr. Reay and the Town Manager attended. The Committee voted to rescind its vote at its August 11, 2016 meeting. Further discussion about the bids submitted by McGee Construction and Cushing Construction followed. The Committee voted to recommend Cushing Construction to the Select Board as to certain items in the RFP,[7] and further voted to recommend that the town negotiate a reduced price as to certain items in the RFP "based upon the town providing the salt." (R. at 48).

The minutes of the Road Committee meeting of August 16, 2016 state that all members of the Committee believed that the bid

the day of August 11, 2016 and is identified as abstaining from the Road Committee vote on that day.

[7] The minutes of this meeting again state that Mr. Reay abstained from voting on this particular item.

from Reay Excavation should have been accepted. Moreover, the Committee voted unanimously to "recommend that our selectboard seek a ruling from MMA if the Reay's bid would have been 'conflict of interest' as defined by Town ordinances." (*Id.*).

On August 22, 2016, the Readfield Select Board held another regular meeting. The Select Board voted to formally accept Mr. Reay's resignation from the Road Committee. The award of the Snow and Ice Control Contract was also considered. The issue of the refusal to accept the Plaintiff's bid was discussed, as well as other aspects of the two bids that were opened. Specifically, the Select Board discussed and heard comments on the bid process; the treatment of Reay Excavation & Trucking and Lenny Reay in particular, and; the town's Conflict of Interest Ordinance as it pertained to the acceptance or rejection of the bid from the Plaintiff. From the record, including the video clips of the Select Board's meeting on August 22, 2016, it is apparent to the court that several people had strong feelings about these issues.

The Select Board voted 4 to 1 to accept the bid from Cushing Construction as recommend by the Road Committee. (R. at 58). Toward the end of the meeting, a motion was made to seek legal advice "on the Conflict of Interest and issues that have happened with Reay Construction." The motion failed on a vote of 1 to 4. (R. at 59).

16

At its regular meeting held on September 6, 2016 the Readfield Select Board voted 4 to 1 to approve the Snow and Ice Control Contract Amendment with Cushing Construction. (R. at 61). The Complaint in this matter was filed on September 21, 2016. At the hearing held on April 5, 2017 on the Plaintiff's Motion For Trial and For Order Regarding Future Course of Proceedings, there was discussion between counsel for the parties about the existence of an "opinion" from a staff attorney with Maine Municipal Association on the subject of a potential conflict of interest, if a member of the Readfield Road Committee submitted a bid on a town project. The parties agreed that a copy of that "opinion" would be included as part of the augmented record on appeal to this court.

The court has reviewed an e-mail from Breana Behrens, Esq., Staff Attorney with the Legal Services Department of MMA, to Readfield Town Manager Eric Dyer dated October 20, 2015. (R. at 137). It is unclear to the court whether this document was known to the members of the Road Committee or the Select Board while it was dealing with the situation pertaining to the Plaintiff's bid on the Snow and Ice Control RFP and Contract. At the August 22, 2016 Select Board meeting, Sue Reay, Lenny's wife, "spoke regarding the Conflict of Interest Ordinance and when she was a board member and regarding the reply from MMA . . . ." (R. at

58). The court cannot tell whether Mrs. Reay was referring to the October 20, 2015 e-mail from Attorney Behrens. Moreover, there is no specific reference to the e-mail in any of the e-mails or minutes involved in this case.

The e-mail from Attorney Behrens to Town Manager Dyer reads in pertinent part as follows:

> Mr. Dyer,
>
> If a Road Committee member expects to submit a bid for a project the safest course of action would be to avoid any appearance of impropriety and recuse themselves from the discussion and development of the RFP (30-A M.R.S.A. §2605). However, since the Road Committee is an advisory committee, it generally would not be considered a legal conflict of interest for a member to bid on an RFP that they helped develop or review. This is because the committee is only responsible for providing technical advice and expertise and it ultimately is up to the selectboard to approve the RFP and accept any bid pursuant to the RFP.
>
> As is the case with most conflict of interest situations, it is important to review all of the facts to determine whether it is necessary for a Committee member to recuse themselves from discussing or voting on a particular matter.

(R. at 137).

## STANDARD OF REVIEW

Generally speaking, in an appeal pursuant to M.R.Civ.P. 80B the court reviews the decision of the local administrative agency to

18

determine if the agency "exceeded the bounds of discretion, committed errors of law, or made findings of fact that are not supported by substantial evidence contained in the record before the administrative agency." *Quiland, Inc. v. Wells Sanitary Dist.,* 2006 ME 113, ¶ 15, 905 A. 2d 806. The court's review is limited to the "record of the proceedings before the governmental agency." M.R.Civ.P. 80B(f). The burden of persuasion rests with the party seeking to vacate the agency's decision. *Bizier v. Town of Turner,* 2011 ME 116, 8, 32 A. 3d 1048.

Moreover, in the context of a municipality's decision to award a contract for goods or services, the Law Court has held that "[a]s a general rule, courts will interfere with a municipal body's award of a contract only if there is fraud, favoritism, or corruption." *Dineen v. Town of Kittery,* 639 A.2d 101, 102 (me. 1994). The high level of deference to a municipality's purchasing decisions appears to be well-established. *See, e.g., Gerald Seigars Trucking, Inc. v. Dresden,* 531 A.2d 1023, 1024, n. 2 (Me. 1987); *Butler v. Tremont,* 412 A.2d 385, 387 (Me. 1980)(absent a statute or ordinance providing otherwise, "the awarding of public contracts is left to the reasonable judgment of proper municipal authorities"). A number of Superior Court decisions recognize the "considerable discretion" a municipality (or other public agency) has "when it comes to deciding what constitutes [its] 'best interest'

19

in awarding a contract." *Maietta Construction, Inc. v. City of Portland*, 2005 Me. Super. LEXIS 48, *5 (2/2/2005) (Cole, J.). *See also Hardypond Construction v. University of Maine System*, 2013 Me. Super. LEXIS 48, *6 (5/6/2013) (Warren, J.); *Warren Mechanical, Inc. v. Carvel Co.*, 1997 Me. Super. LEXIS 94, *20 (3/18/1997) (Saufley, J.) ("courts will not interfere lightly in the actions of a public body engaged in a bidding procedure").

Nevertheless, the Plaintiff maintains that the court's standard of review in this case is *de novo* for two reasons. First, the Plaintiff argues that this case "involves the construction of the Town's conflict of interest ordinance." *Plaintiff's Brief On Appeal* at 10-11. In support of this argument the Plaintiff has cited a number of cases that stand for the proposition that the interpretation of a municipal ordinance is a question of law for the court to decide *de novo*. The cases relied upon by the Plaintiff, however, all involved municipal zoning ordinances, not a conflict of interest ordinance that is essentially intended to provide broad ethical guidance and direction to municipal officers and officials in the conduct of municipal affairs, particularly in relation to those issues that arise in the context of a municipality soliciting bids to do business with it.

In the court's view, this case does not simply involve the court making an interpretation of Readfield's conflict of interest

ordinance and determining whether Mr. Reay did or did not violate it when he submitted a bid for the Snow and Ice Control Contract while having served on the Road Committee that reviewed and helped to develop the RFP and other bid documents for that contract.

Rather, based on the *Dineen* decision and those that preceded it, the court believes that the decision to accept or reject the Plaintiff's bid was one committed to the reasonable discretion of the Readfield Select Board.[8] As such, the Plaintiff has the burden of demonstrating that the Select Board exceeded the bounds of discretion. *Sager v. Town of Bowdoinham*, 2004 ME 40, ¶ 11, 845 A.2d 567, 570. "An abuse of discretion may be found where an appellant demonstrates that the decisionmaker exceeded the bounds of the reasonable choices available to it, considering the facts and circumstances of the particular case and the governing law. It is not sufficient to demonstrate that, on the facts of the case, the decisionmaker could have made choices more acceptable to the appellant or even to a reviewing court." *Id.*

Second, the Plaintiff contends that this case should be subject to *de novo* review because the augmented record on appeal

---

[8] Alternatively, based on *Dineen,* it can be argued that the standard is whether the Select Board's decision was "arbitrary or capricious." In this case, however, the court will apply the abuse of discretion standard, since it appears to be most consistent with the generally used standard of judicial review in Rule 80B appeals. Moreover, in the court's view, it is arguably a more generous standard for the Plaintiff. *See Help-U-Sell, Inc. v. Maine Real Estate Comm'n,* 611 A.2d 981, 984 (Me. 1992).

allegedly contains information not considered by the Select Board. *Plaintiff's Brief on Appeal* at 11 *citing Baker's Table, Inc. v. City of Portland*, 2000 ME 7, ¶ 9, 743 A.2d 237, 240-42.

M.R.Civ.P. 80B(f) states explicitly that except where otherwise provided, "review shall be based upon the record of the proceedings before the governmental agency." The fact that the parties have cooperated in preparing and presenting an augmented record, does not alter the standard of judicial review. The case relied on by the Plaintiff - *Baker's Table* - confirms this. "Rule 80B(d) is not intended to allow the reviewing court to retry facts that were presented to the governmental decisionmaker . . . ." 2000 ME 7, ¶ 9. Rather, "it is intended to allow the reviewing court to obtain facts *not in the record* that are necessary to the appeal before the court." *Id.* (emphasis in original). In short, even with the augmented record, this case remains an <u>appeal</u>, with the court's review based on and limited to the augmented record. Contrary to the Plaintiff's assertion, the court is not "empowered to arrive at its own judgment without giving deference to the decision of the Select Board." *Plaintiff's Brief on Appeal* at 12.

Furthermore, the court is not satisfied that the Select Board was not aware of most, if not all, of the material and information in the augmented record. With respect to the numerous e-mails, in many instances the Select Board was copied on them. With

22

respect to the Road Committee meeting minutes, a member of the Select Board was in attendance at those meetings. Having reviewed the entire augmented record, including the video clips, the court is persuaded that the Select Board had a thorough understanding of the issues involving Mr. Reay; the Town Manager; the Snow and Ice Control RFP, and; the concern of a possible conflict of interest, or at least the perception or appearance of one.[9]

## DISCUSSION

The Plaintiff argues that the Town's Conflict of Interest Ordinance did not apply to Mr. Reay because (1) he was not a municipal officer or official, and (2) he did not participate in the making of the Snow and Ice Control Contract. Accordingly, he maintains, the Select Board committed legal error when, through the Town Manager, it refused to accept a bid from his company for the Snow and Ice Control Contract.

The Town of Readfield's Conflict of Interest Ordinance (§10.1.1) provides in pertinent part as follows:

> In accordance with Title 30-A M.R.S.A. Section 2605, any municipal officer or official of the Town,

---

[9] In its Brief on Appeal at 12, the Plaintiff states that "[t]he Town Manager never informed the Select Board of MMA Attorney Behren's legal opinion." All that can be said about that issue is that the augmented record does not contain a clear and explicit reference to that "opinion" by the Town Manager to the Select Board. Whether the Town Manager informed the Select Board of that "opinion" in a manner not revealed in the augmented record, or whether the Select Board was otherwise aware of the "opinion," cannot be determined on the existing record before the court.

elected or appointed, who himself . . . has any financial interest, direct or indirect, or by reason of ownership of stock in any corporation, in any contract with the Town, or in the sale of any land, material, supplies, or services to the Town or who is a contractor supplying the Town with services or material shall make known the interest and shall refrain from voting upon or otherwise participating in his or her capacity as an officer or employee in making such sale or the making or performing of such contract.

(R. at 24).

The ordinance does have some ambiguities in it. For example, it initially refers to "any municipal officer or official of the Town." At the end of the ordinance, however, it refers to "an officer or employee." The ordinance is clear that if an official has an interest, the official shall disclose the interest and shall not vote on any sale or contract. But it also prohibits "otherwise participating . . . . in . . . the making or performing of such contract." Is participating in the making of a contract limited to its execution, or does it include reviewing and assisting in the development and formulation of the contract documents and language?

By its very terms, Readfield's Conflict of Interest Ordinance is based on the provisions of 30-A M.R.S. §2605. *See* 30-A M.R.S. §2605(7) ("In their discretion, the municipal officers may adopt an ethics policy governing the conduct of elected and appointed municipal officials"). Moreover, for purposes of section

24

2605, the term "official" has been defined to mean "any elected or appointed member of a municipal . . . government." 30-A M.R.S. §2604(2). Significantly as well, 30-A M.R.S. §2605(6) directs that "[e]very municipal official shall attempt to avoid the appearance of a conflict of interest by disclosure or by abstention."

The court concludes that the Plaintiff has failed to show that the Select Board or the Town Manager abused their discretion by exceeding the bounds of reasonable choices available to them, given all the facts and circumstances of this particular case. The Select Board and the Town Manager could have reasonably concluded that Mr. Reay was a "municipal official" within the meaning of the town's Conflict of Interest Ordinance, by virtue of his appointment – by the Select Board in a formal, publicly recorded vote – as a member of the Road Committee. Such a conclusion was not an unreasonable interpretation of the Conflict of Interest Ordinance, given the broad definition of the term "official."

Furthermore, it was not an unreasonable determination that the Road Committee's involvement, over a period of months and through several drafts, in the review and development of the contract documents with the Snow and Ice Control RFP, fell within the scope of "otherwise participating in . . . the making or performing" of the contract. The court cannot say that it would

25

have been an unreasonable exercise of discretion had the Select Board and Town Manager decided otherwise. But the test is not whether another reasonable choice or decision could have been made, but whether the choice that was made was an abuse of discretion.

The particular facts of this case amply support the reasonableness of the Select Board's ultimate exercise of discretion. Early on in the preparation of the Snow and Ice Control RFP, the Town Manager made it unmistakably clear to the Select Board and to the Road Committee that he considered this particular RFP and contract to be of high importance to the Town of Readfield. It involved a contract of well over a million dollars, and obviously impacted a critical public safety issue during the winter months.

The Town Manager also flagged the issue of a potential conflict of interest for Mr. Reay by asking him directly on May 16, 2016 whether he intended to submit a bid on the RFP. He also made it clear to Mr. Reay at the same time that if he (Mr. Reay) intended to bid on the RFP, he could not be involved "in setting the parameters for the contract and bid award." (R. at 30). Apparently, there was some type of angry verbal exchange between Mr. Reay and Mr. Dyer at the Road Committee meeting on May 19, 2016. Nevertheless, the minutes of the Road

Committee for that meeting document the fact that Mr. Reay "said he will not bid on the snow removal contract." (R. at 45). Thereafter, he attended and participated in all Road Committee meetings on the subject in the months of June, July and August, 2016.

At some point, he apparently changed his mind, and decided that he wanted to bid on the RFP. He abstained from voting at the July meeting, but still attended and, presumably, participated. The minutes of the meeting of July, 2016 do not suggest otherwise. Approximately 4 hours before the bid opening on August 11, 2016, he resigned his membership on the Road Committee.

Under these circumstances, the court has no difficulty in concluding that the Town Manager and the Select Board acted well within their discretion in refusing to accept or open a bid from the Plaintiff. Given the unequivocal position of the Town Manager that, at the very least, an appearance of a conflict of interest existed with respect to Mr. Reay's participation in the development of the RFP such that the integrity of the bidding process could be questioned, and given the equally unequivocal representation that Mr. Reay would not submit such a bid, it was within the bounds of

27

reasonable choices for the Select Board and the Town Manager to reject the Plaintiff's bid.[10]

The Plaintiff has raised the point that when he was appointed to the Road Committee, at least one Select Board member expressed the personal opinion that Mr. Reay would not have a conflict of interest if he bid for town work, provided he disclosed and abstained from voting. Of course, these remarks are not binding on the Town Manager and Select Board acting as a body. Moreover, they are totally divorced from the facts of this case.

The Plaintiff has argued that he abstained from voting on the snowplowing RFP and resigned prior to submitting a bid. The reality is that the concern of the Town Manager and the Select Board was not Mr. Reay's membership on the Road Committee. Rather, it was his involvement and participation in the review and development of a million dollar RFP for the very contract he decided to bid for. Abstaining from voting and resigning did

---

[10] The Plaintiff's claim that he did not make a firm commitment at the meeting of May 19, 2016 not to bid, but reserved to himself the right to change his mind, is unconvincing. *See Plaintiff's Amended Offer of Proof.* First, the minutes of the May 19, 2016 Road Committee meeting could not be clearer. Second, those minutes, as written, were approved by the Road Committee, including Mr. Reay, at its meeting held on June 23, 2016. (R. at 46). Third, the minutes of the May 19, 2016 meeting indicate that the Town Manager questioned whether Mr. Reay should be participating in the review of the snowplowing RFP "if he is going to bid on the contract." In response, other members of the Committee expressed the view that they wanted to hear Mr. Reay's comments because of his expertise on the subject. At that point, Mr. Reay stated that he would not bid on the contract. In other words, Mr. Reay's declaration that he would not bid on the RFP was made for the very purpose of allowing him to participate in the review, discussion and development of the RFP, and thereby eliminate the threat to the integrity of the bidding process the Town Manager feared.

28

nothing to undo the involvement and participation by Mr. Reay in the Road Committee's work on this particular RFP.

The Plaintiff has tried to suggest that his participation on the snowplowing RFP was not significant. Such a claim in unavailing. The Road Committee minutes show that there was lengthy and detailed review and discussion of the snowplowing RFP. There is no indication whatsoever that Mr. Reay did not fully participate. Indeed, as already noted, the other members of the Committee were eager to hear Mr. Reay's views on the subject.

The Plaintiff maintains that the Town Manager failed to inform the Select Board of the existence of the "opinion" from Staff Attorney Behrens of the Maine Municipal Association. Whether this is true or not is immaterial. First, the e-mail from Attorney Behrens makes the obvious point that the safest course of action for a Road Committee member "would be to avoid any appearance of impropriety and recuse themselves from the discussion and development of the RFP." (R. at 137). In other words, such a course of action, which is the one the Town Manager and the Select Board insisted upon, was a reasonable exercise of their discretion. Second, Attorney Behrens makes the point that because the Road Committee is an advisory committee, there would not be a "legal" conflict of interest, i.e., the contract would not be voidable. Irrespective of whether Mr. Reay's actions

29

implicated a "legal" conflict of interest, the Town Manager and the Select Board acted within the bounds of reasonable discretionary decisions in choosing to pursue a course of action that sought to avoid even the appearance of a conflict of interest.

Finally, the court concludes that the Plaintiff has failed to carry its burden of showing that the Town Manager or the Select Board was biased against either Mr. Reay or his company. At most the Plaintiff has shown that the Town Manager and Mr. Reay had some type of verbal exchange because the Town Manager was adamant in wanting to know – before the Road Committee began its work on the snowplowing RFP – whether Mr. Reay was going to submit a bid in response to that very RFP. The fact that two individuals had different views on a topic does not show bias. Indeed, this very controversy could have been easily avoided had Mr. Reay simply recused from <u>any</u> participation or involvement in the Snow and Ice Control RFP and Contract as a member of the Town of Readfield Road Committee.

## CONCLUSION

The entry is:

The Plaintiff's Appeal pursuant to M.R.Civ.P. 80B is DENIED.

The Clerk is directed to incorporate this Order into the docket of this case by reference in accordance with M.R.Civ.P. 79(a).

Dated: October 16, 2017

William R. Stokes
Justice, Superior Court